**Bruce DOWNEY, Petitioner–Appellee,**

**v.**

**Joseph CRABTREE, Warden, Federal Correctional Institution, Respondent–Appellant.**

**No. 96–35471.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 18, 1996.

Decided Oct. 25, 1996.

Thomas M. Gannon, United States Department of Justice, Washington, DC, for respondent-appellant.

Stephen R. Sady, Chief Deputy Federal Public Defender, and Wendy R. Willis, Assistant Federal Public Defender, Portland, OR, for petitioner-appellee.

Before: ALDISERT,* PREGERSON, and T.G. NELSON, Circuit Judges.

ALDISERT, Circuit Judge.

This appeal by Joseph H. Crabtree, warden of the Federal Correctional Institution, Sheridan, Oregon, requires us to decide if the federal Bureau of Prisons properly defined "convicted of a nonviolent offense" as set forth in 18 U.S.C. § 3621(e)(2)(B) of the Violent Crime Control and Law Enforcement

*Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by

Act of 1994. Such a determination is necessary to review whether the district court properly held that Petitioner Bruce Downey, a federal prisoner, is entitled to be considered by the Bureau of Prisons for a sentence reduction as authorized by Congress based upon his completion of a drug-treatment program while incarcerated. The district court disagreed with the Bureau's interpretation of § 3621 and granted Downey's petition for a writ of habeas under 28 U.S.C. § 2241. The warden appeals that decision.

The district court held that Downey successfully completed a residential drug-abuse treatment program, received the requisite certificate and was, therefore, eligible for a sentence reduction of up to one year. The court decided the Bureau of Prisons' determination that Downey was convicted of a "crime of violence" and, thus, ineligible for a sentence reduction was contrary to governing case law and directed the Bureau to grant Downey a one-year sentence reduction for his completion of the treatment program.

In administering the sentence-reduction provisions authorized by Congress, the Bureau categorically rules that a sentence enhancement for firearms use or possession automatically converts a predicate offense to a crime of violence. Sentence reductions authorized under § 3621(e)(2)(B) are denied irrespective of whether the predicate offense itself is considered nonviolent. This appeal requires us to decide several separate, but related, issues: whether the Bureau has exclusive power to interpret the governing statute; if not, whether its interpretation of the statutory language "convicted of a nonviolent offense" is congruent with decisions of this court and those of our sister circuits; and, if not, whether a federal court has the power to grant habeas corpus relief in this case or is required to remand to the Bureau for reconsideration in light of our interpretation of the law.

■ We review *de novo* a district court's decision to grant or deny a petition for writ of habeas corpus. *Weston v. Kernan,* 50

designation.

F.3d 633, 636 (9th Cir.), *cert. denied,* ——— U.S. ———, 116 S.Ct. 351, 133 L.Ed.2d 247 (1995); *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir.1991). The district court had subject matter jurisdiction under 28 U.S.C. §§ 2241(a), (c)(3), and 1331. We have jurisdiction under 28 U.S.C. § 1291. The appeal was timely filed pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure.

### I.

Bruce Downey entered a guilty plea in the District of Oregon on an indictment charging him with violation of federal drug laws. At sentencing, he received a sentence enhancement because firearms were found at the location where he was arrested for the illegal narcotics operation. At the time of his arrest, police seized firearms, 150.26 grams of methamphetamine and $9,385 in cash from the residence at which he was located. Downey was eventually indicted under federal law for possession of more than 100 grams of methamphetamine in violation of 21 U.S.C. § 841(a)(1); it is that specific offense to which he pleaded guilty and for which he was subsequently convicted. On January 14, 1991, he was sentenced to imprisonment for 92 months and four years of supervised release. The district court applied a two-level sentence enhancement authorized under the United States Sentencing Guidelines for offenses involving drugs if a dangerous weapon was possessed. U.S.S.G. § 2D1.1(b)(1) (1995).

While in federal custody, Downey completed the Bureau's 500–hour substance-abuse treatment program. Such programs are offered pursuant to congressional enactment, providing:

> The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

18 U.S.C. § 3621(b). He received his certificate of successful completion of the treatment program on February 3, 1995, and subsequently requested the Bureau to reduce his sentence as authorized by Congress in the Violent Crime Control and Law Enforcement Act of 1994. The Bureau may reduce prisoners' sentences consistent with that Act, which provides in relevant part:

> (2) Incentive for prisoners' successful completion of treatment program.—
>
> \*    \*    \*    \*    \*    \*
>
> (B) Period of custody.—The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (1994).

On October 4, 1995, the Bureau denied Downey eligibility for a sentence reduction, a denial based on the Bureau's categorical exclusion from consideration for sentence reduction of inmates who, when sentenced, received a base offense-level enhancement under the Sentencing Guidelines for possession of a dangerous weapon. U.S.S.G. § 2D1.1(b)(1). It bears repetition that Downey was convicted under 21 U.S.C. § 841(a)(1) for possession of methamphetamine, not for possession of firearms under § 924(c). The sentencing judge applied a two-point sentence enhancement authorized in § 2D1.1(b)(1) for the firearms seized from the residence where Downey and the methamphetamine were found.

Downey petitioned the district court for a writ of habeas corpus, challenging the Bureau's denial of his eligibility for a sentence reduction. Addressing only the § 3621 claim, the court first concluded that Downey was not convicted of a crime of violence and then ordered the Bureau to give him a one-year sentence reduction. Thus, the court granted Downey's Petition for Writ of Habeas Corpus. *Downey v. Crabtree,* 923 F.Supp. 164, 165 (D.Or.1996). This appeal by the government followed.

### II.

Our primary task is to construe the phrase "convicted of a nonviolent offense" as set forth in 18 U.S.C. § 3621(e)(2)(B). The statute does not define the term.

The Bureau of Prisons promulgated certain Bureau Program Statements ("BOP P.S.") to assist its staff in interpreting the statute:

> 6.1 *Consideration for early release* § 550.58. An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, ..., unless the inmate is an INS detainee, ..., or unless the inmate's current offense is determined to be a crime of violence as defined in 18 U.S.C. [§] 924(c)(3),
>
> ....

BOP P.S. 5330.10 *Drug Abuse Programs Manual, Inmate* (May 25, 1995); ER 76.

For sentencing purposes, 18 U.S.C. § 924(c)(3) (1984) ("Penalties") defines the term "crime of violence" as:

> an offense that is a felony and—
>
> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

BOP P.S. 5162.02, *Definitions of "Crimes of Violence"* (July 24, 1995), ER 89 (quoting 18 U.S.C. § 924(c)(3) (1984).)

Under the BOP P.S. 5162.02 framework, the crime for which Downey was convicted, 21 U.S.C. § 841(a) (Controlled Substances Act), is categorized among the criminal offenses that "may" be crimes of violence "depending on the specific offense characteristic assigned." BOP P.S. 3162.02(9)(c); ER 93, 95. Section 924 (penalties for firearms violations) is similarly categorized as a criminal offense that "may" be a crime of violence "depending on a variety of factors." BOP P.S. 5162.02(10)(c); ER 95–96. For such crimes, the Bureau looks to the presentence investigation report for guidance on whether to define an offense as violent or nonviolent.

For crimes listed in BOP P.S. 3162.02, section "(9)", which includes Downey's crime of conviction, the Bureau examines the "Specific Offense Characteristics" in the presentencing report to ascertain whether the district court found the offense involved violence. In the absence of any indication of the district court's findings on the violence question in the presentence investigation report, the Bureau's case management staff will examine the Sentencing Guidelines applied to the particular case to determine whether the sentencing court found the offense involved the use of force. BOP P.S. 5162.02(9); ER 93. The Bureau categorically denies early-release credit for inmates who are convicted under § 841(a) if they also receive a sentence enhancement for possession of firearms. Downey is an example.

An analysis of the statutory language, the Bureau's policy statements and the categorical framework utilized to implement the sentence-reduction plan for inmates who complete a treatment program discloses the following seeds of controversy:

- The controlling statute speaks in terms of "convicted of a nonviolent offense."

- The Bureau's policy statements address a "crime of violence," a term that does not appear in the relevant statute, § 3621(e)(2)(B).

- Although the relevant statute limits eligibility to "prisoners *convicted* of a nonviolent offense," the Bureau's categorical framework focuses on *sentencing*, a concept that does not appear in the statutory language.

Reviewing this case on appeal encompasses three tasks. We must first decide whether the Bureau has non-reviewable, exclusive competence to interpret the statute. If we decide that it does not, we must then determine whether the Bureau acted erroneously by equating "a nonviolent offense" with the antithesis of "a crime of violence." A related consideration is whether the Bureau erred by conflating the guilt-finding process, which is reflected in the statutory language "convicted," with the punishment process, which is reflected in the Bureau's program statements referring to Sentencing Guidelines. The ultimate question is one of statutory interpretation and, as to § 3621(e)(2)(B)'s relationship

to the sentencing process, is one of first impression in the courts of appeals.

### III.

■ The government correctly states that the Bureau of Prisons has broad discretion to adopt any reasonable definition of "nonviolent offense" under § 3621(e)(2)(B). However, the Bureau's endowment of broad discretion does not immunize its decisions from judicial review, especially concerning questions of statutory interpretation. Bureau of Prison program statements, including the ones adopted to implement § 3621(e)(2)(B), are not subject to the "rigors of the Administrative Procedure Act" and are, therefore, only "entitled to some deference." *Reno v. Koray*, —— U.S. ——, ——, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995). When the Bureau's "interpretation is ... in conflict with the plain language of the statute, deference is [not] due." *National R.R. Passenger Corp. v. Boston and Maine Corp.*, 503 U.S. 407, 417, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992); *Medtronic, Inc. v. Lohr*, —— U.S. ——, ——, 116 S.Ct. 2240, 2263, 135 L.Ed.2d 700 (1996) ("Where the language of the statute is clear, resort to the agency's interpretation is improper."); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), *reh'g denied*, 468 U.S. 1227, 105 S.Ct. 28, 29, 82 L.Ed.2d 921 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

■ Although deference is extended to the Bureau's interpretation of "conviction of a nonviolent offense" under § 3621(e)(2)(B), the federal courts have ultimate responsibility to determine which offenses are violent and nonviolent under the Sentencing Guidelines. The courts also have responsibility to resolve issues of statutory construction. *Southern California Edison Co. v. Federal Energy Regulatory Commission*, 770 F.2d 779, 782 (9th Cir.1985) ("[T]he courts are the final authorities on issues of statutory construction."). Accordingly, we reject the government's argument that Congress' omission of a definition for "nonviolent offense" in § 3621(e)(2)(B) suggests an intention to entrust defining that term entirely to the Bureau of Prisons' discretion. Appellant's Brief at 8 n. 4. We hold that the Bureau's interpretation of the statute is subject to judicial review.

### IV.

Without question, the Bureau has broad discretion over the entire drug-treatment process within the federal corrections system, beginning with determining which inmates ever enter substance-abuse programs. Under § 3621, the Bureau "shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). As an incentive for prisoners to obtain treatment while in custody, Congress authorized the Bureau to reduce prisoners' sentences upon the Bureau's determination that an inmate successfully completed a residential substance-abuse program. Congress made eligible for the sentence reduction those inmates who successfully completed the drug-abuse program and who were "convicted of a nonviolent offense." Congress defined several terms in § 3621(e)(2)(B), but did not define "nonviolent offense."

■ The Bureau looks to § 924(c)(3) to define "nonviolent offense" and determine which inmates are eligible for sentence reductions. The Bureau incorporates into § 3621(e)(2)(B) the definition of "crimes of violence" as set forth in 18 U.S.C. § 924(c)(3); that is:

an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Immediately apparent is the Bureau's departure from traditional methods of statutory construction in its interpretation of the

phrase "convicted of a nonviolent offense." The Bureau has not applied the Literal Rule, American Plain Meaning Rule, Textualism, Intentionalism, Purposivism, or so-called Hybrid Dynamic Theories.[1]  Instead, the Bureau adopts a unique statutory interpretation technique and concludes that inmates are "convicted of a nonviolent offense" if they did not commit a crime of violence as determined only after considering various Sentencing Guideline factors that may or may not be directly related to the crime for which the inmate was convicted.  In employing such a technique, the Bureau simply assumes that a "crime of violence" as defined in § 924(c)(3) may never be a "nonviolent offense" in the distinguishable context of § 3621(e)(2)(B).

The courts of appeals are divided on the meanings of the terms "nonviolent offense" and "crime of violence" in the context of certain Sentencing Guidelines.[2]  However, this court has spoken unequivocally regarding firearms possession, the offense the Bureau contends is relevant to determining whether Downey was convicted of a nonviolent offense and, therefore, the offense purportedly relevant to this case.  Interpreting several Sentencing Guidelines provisions, we have held that mere possession of a firearm by a felon is not a crime of violence.  *United States v. Cantu,* 12 F.3d 1506, 1513 (9th Cir.1993) (defendant convicted of being a felon in possession of a firearm has committed a nonviolent offense for purposes of eligibility for downward-departure provision in Sentencing Guidelines).  In *Cantu,* we set forth the analysis worth repeating here:

> Section 5K2.13 requires that the district court find that Cantu's offense, possession of a firearm by a felon, is non-violent.  We have defined "non-violent" as the converse of a "crime of violence" under U.S.S.G. § 4B1.2(1)(i), one of the career offender guidelines: that is, a non-violent offense is one that does not have "as an element the use, attempted use, or threatened use of physical force against the person of anoth-

er."  U.S.S.G. § 4B1.2(1)(i);  *United States v. Borrayo,* 898 F.2d 91, 94 (9th Cir.1989).

> The application note to § 4B1.2(1)(i) states, "The term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon."  U.S.S.G. § 4B1.2, Note 2 (November 1, 1991).  That provision bolstered our conclusion in *United States v. Sahakian,* 965 F.2d 740, 741–43 (9th Cir.1992), that being a felon in possession is not a crime of violence for the purpose of applying the career offender guidelines.  We have since extended *Sahakian* to sentences imposed under the Armed Career Criminal Act, 18 U.S.C. § 924(e), ..., and to the application of 18 U.S.C. § 924(c), which criminalizes the use of a firearm during a crime of violence, *United States v. Canon,* 993 F.2d 1439, 1441–42 (9th Cir.1993).  Our reasoning was the same in all of those cases: that the status of being a felon in possession "does not have as an element the actual, attempted or threatened use of violence[,] nor does the actual conduct it charges involve a serious potential risk of physical injury to another."  *Sahakian,* 965 F.2d at 742.

> That reasoning is equally persuasive here.  We therefore hold that possession of a firearm by a felon is not a crime of violence for the purpose of a departure under § 5K2.13.

12 F.3d at 1513–14.

Under *Cantu,* defendants *convicted* of being a felon in possession of a firearm may not be denied sentence-reduction eligibility under a Sentencing Guideline provision on grounds that their offense was not nonviolent.  Parity of reasoning dictates that inmates *not convicted* of the firearm-possession offense, even if affected by sentence-enhancement factors for similar conduct, also cannot be denied sentence-reduction eligibility under a congressionally authorized program on grounds

---

**1.**  See Ruggero J. Aldisert, The Judicial Process, Text, Materials and Cases (2d ed.) 193–312 (West 1996).

**2.**  *See, e.g., United States v. Mayotte,* 76 F.3d 887, 889 (8th Cir.1996) (collecting cases);  *United*

*States v. Poff,* 926 F.2d 588 (7th Cir.), *cert. denied,* 502 U.S. 827, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991); *compare, United States v. Weddle,* 30 F.3d 532, 537–38 (collecting cases);  *United States v. Chatman,* 986 F.2d 1446, 1449 (D.C.Cir.1993).

that their offense was not nonviolent.[3] Thus, even if firearms possession was the relevant offense in this case, we would not necessarily find that Downey was convicted of a nonviolent offense for purposes of § 3621(e)(2)(B).

Further detracting from the Bureau's approach and the government's argument is the concession made by the government in a case strikingly similar to the one at bar. In *United States v. Arrellano–Rios*, 799 F.2d 520, 523 (9th Cir.1986), the government conceded that Downey's predicate offense-possession of controlled substances with intent to sell, 21 U.S.C. § 841(a)(1)—is a nonviolent offense. The government conceded that narcotics offenses under § 841(a)(1) are not "crimes of violence" within the meaning of 18 U.S.C. § 924(c), the very statute from which the Bureau derives its definition of "nonviolent offense" for purposes of the sentence-reduction program in § 3621(e)(2)(B). *See* BOP P.S. 5162.02, *Definitions of "Crimes of Violence"* (July 24, 1995), ER 89.

The government's concession in *Arrellano–Rios* and the reasoning in *Cantu* make clear that a violation of § 841(a)(1), the predicate offense in this case, is a nonviolent offense. Courts have similarly stated that drug-trafficking convictions, and other arguably serious offenses, cannot necessarily be categorically deemed "crimes of violence." *See, e.g., United States v. Canon*, 993 F.2d 1439, 1441 (9th Cir.1993) (possession of firearm by felon is not a "crime of violence" under § 924(c)); *United States v. Cruz*, 805 F.2d 1464, 1468–75 (11th Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987) (whether Congress intended statutory definition of "crime of violence" to include drug trafficking is ambiguous and such ambiguity precludes convicting defendants convicted of underlying narcotics offenses for use of fire-

arms during commission of crime of violence); *United States v. Diaz*, 778 F.2d 86, 88 (2nd Cir.1985) (narcotics offenses are not crimes of violence within meaning of statute describing offense of carrying or using firearm in commission of crime of violence); *United States v. Wells*, 623 F.Supp. 645 (S.D.Iowa) (offense of cocaine distribution is not a "crime of violence" within firearm-enhancement statute), *aff'd*, 773 F.2d 230 (8th Cir.1985); *United States v. Bushey*, 617 F.Supp. 292 (D.C.Vt.1985) (possession with intent to distribute narcotics, by itself or in conjunction with use or carrying of firearm, is not "crime of violence" for purposes of statute prohibiting use of firearm during or in relation to crime of violence); *United States v. Jernigan*, 612 F.Supp. 382 (E.D.N.C.1985) (possession with intent to distribute cocaine was not a crime of violence within meaning of statute, § 924(c), imposing penalty for using firearm during crime of violence).

The relevant statute speaks clearly and unambiguously. The operative word of § 3621(e)(2)(B) is "convicted." Downey was convicted of a drug-trafficking offense, which is not a crime of violence. Section 3621(e)(2)(B) addresses the act of convicting, not sentencing or sentence-enhancement factors. The Bureau erred by conflating the guilt-determination (conviction) and sentencing processes. The result is a Bureau interpretation that runs counter to the Sentencing Commission's formulation of a "non-violent offense" and judicial endorsement of that formulation.

## V.

The Sentencing Commission's delineation of "crime of violence" articulated in § 4B1.2

---

**3.** We are satisfied with our literal interpretations of the terms in 18 U.S.C. § 3621(e)(2)(B), and our literal application of the statute on which the Bureau relies, 18 U.S.C. § 924(c), to define key terms and deny inmates sentence-reduction eligibility. We reject the government's argument that a more expansive interpretation of the law—one beyond the plain meaning of the language—is permissible here because § 3621(e)(2)(B) is merely a "remedial" statute. The Supreme Court's recent decision in *Bailey v. United States*, —– U.S. —––, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), supports our literal interpretation of

these laws. There the Court indicated that federal courts have gone too far in imposing mandatory minimum sentences for defendants who "use" a firearm in drug-trafficking crimes. To be convicted of such "use," defendants must have actively employed the firearms to effectuate the drug offense. Given that the facts in this case fail to indicate Downey could have been convicted for "use" of a firearm, we are reluctant to move in a direction contrary to that of the Court in *Bailey* by allowing the Bureau to go beyond the scope of the statutory language, "convicted," at issue in this case.

of the Sentencing Guidelines must also figure in our analysis. Both parties agree that the Commission's Guidelines regarding § 4B1.2 are relevant to this case. Appellant's Brief at 16; Appellee's Brief at 33–36. The Sentencing Guidelines Manual defines "crime of violence" for the purpose of identifying repeat violent offenders as:

> any offense under federal or state law punishable by imprisonment for a term exceeding one year that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or,
>
> (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(1) (1995).

The Sentencing Commission's Application Notes interpreting this section clearly state:

> The term "crime of violence" does not include the offense of unlawful possession of a firearm by a felon.

*Id.* at Application Note 2.

Courts of appeals have uniformly upheld the Commission's broad authority to exclude the unlawful possession of a firearm by a felon from the definition of "crime of violence." *See, e.g., United States v. Rutherford* 54 F.3d 370, 374 n. 11 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 323, 133 L.Ed.2d 224 (1995); *United States v. Parson,* 955 F.2d 858, 867 (3rd Cir.1992); *see also Stinson v. United States,* 508 U.S. 36, 47, 113 S.Ct. 1913, 1920, 123 L.Ed.2d 598 (1993) (upholding Commission's exclusion of possession of firearm by a convicted felon from definition of "crime of violence"). Accordingly, the Sentencing Guidelines not only fail to support the Bureau's statutory interpretation in this case, but the Guidelines experience cuts directly against its contentions. The Sentencing Guidelines plainly and unequivocally state that the term "crime of violence" does not include the crime of possession of a firearm by a felon, and case law supports this interpretation.

## VI.

The Bureau's interpretation of § 3621(e)(2)(B) also runs counter to the teachings of *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). There the Court "require[d] the trial court to look only to the fact of conviction and the statutory definition of the prior offense" in determining whether petitioner's prior burglary offense constituted a previous "conviction of a violent felony" for purposes of a sentencing-enhancement statute. *Id.* at 602, 110 S.Ct. at 2160. The Bureau in this case relied on sentence-enhancement devices and related staff considerations, factors external to the constituent elements of the crime of conviction, to define "a nonviolent offense" for the purposes of 18 U.S.C. § 3621(e)(2)(B). Reliance on such external factors flies in the face of the *Taylor* analysis.

The statute under consideration in *Taylor* authorized district courts to increase sentences for persons convicted of possession of a firearm by a felon if the felon has "three previous convictions ... for a violent felony." 18 U.S.C. §§ 922(g)(1), 924(e). To determine whether the prior burglary offense was "violent," the Court had to address the more general issue of whether the sentencing court must look only to the statutory definitions of the prior offenses or whether the court may consider other evidence concerning the defendant's prior crimes. 495 U.S. at 600, 110 S.Ct. at 2159. The Court noted:

> The Courts of Appeals uniformly have held that § 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions.

*Id.* (citations omitted).

In explaining that considerable congressional debate addressed which categories of offenses might be deemed violent or nonviolent the Court observed:

> [N]o one suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case. If Congress had meant to adopt an approach that would require the sentencing court to engage in an elabo-

rate factfinding process regarding the defendant's prior offenses, surely this would have been mentioned somewhere in the legislative history.... We think the only plausible interpretation of § 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense.

*Id.* at 601–02, 110 S.Ct. at 2159–60.

We perceive no reason why we should not apply the Court's reasoning in *Taylor* to the case at bar. To interpret properly the authorizing statutory phrase "convicted of a nonviolent offense," *Taylor* would instruct that Congress intended that the Bureau and reviewing courts should look only to the fact of conviction and not to external facts influencing sentencing. As the Court in *Taylor* concluded, if Congress meant to adopt an approach that would require the Bureau or the federal courts to engage in elaborate fact-finding processes regarding a prisoner's crime of conviction, "surely this would have been mentioned somewhere in the legislative history." 495 U.S. at 601, 110 S.Ct. at 2159. It was not.

For the above reasons, therefore, we hold that Downey was convicted of a nonviolent offense and was, therefore, eligible for a sentence reduction.

Our inquiry does not stop here. Given the Bureau's error in interpreting the statute, we must now decide whether the district court had the authority to grant Downey's Writ of Habeas Corpus or was required to remand to the Bureau for reconsideration in light of judicial interpretation of the statute.

## VII.

■ Under the Sentencing Reform Act, persons who have been sentenced to imprisonment "shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed,...." 18 U.S.C. § 3621(a) (Postsentence Administration). Section 3621(e)(2)(B) of Title 18 ("Incentive for prisoners' successful completion of treatment program") reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program. The statute provides,

(B) Period of custody.—The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B) (emphasis added). Relevant legislative history also supports only this conclusion. *See, e.g.,* 139 Cong. Rec. H8724 (reduction within discretion of the Bureau); H8728 (the sentence reduction "is not mandatory time off, it is an option, up to the prison authorities").

The broad discretion afforded the Bureau in administering prisoners' sentences is recognized throughout ruling case law. Regarding substance-abuse treatment programs, the Bureau's discretion begins with deciding whether an inmate ever enters such a program. Section 3621(b) provides that the Bureau "shall make available appropriate substance abuse treatment for each prisoner *the Bureau determines* has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b) (1988)(emphasis added). "[I]t is solely within the authority of the Federal Bureau of Prisons ... to select those prisoners who will be best served by participation in [drug-rehabilitation] programs." *United States v. Jackson,* 70 F.3d 874, 877 (6th Cir.1995).

In *Jackson,* the court held the district court exceeded its authority by ordering defendant's participation in a drug-treatment program while incarcerated. *Id.* at 878. *See also United States v. Williams,* 65 F.3d 301, 307 (2nd Cir.1995) (sentencing court has no authority to order that defendant be confined in a particular facility or placed in a particular treatment program; those decisions are within Bureau's sole discretion); *United States v. Sotelo,* 94 F.3d 1037, 1041 (7th Cir.1996) (holding district court has no authority to order a restriction upon persons with whom convicted defendant can communicate, although "the court certainly had the

option to recommend that the [Bureau] impose such a restriction").

Like the drug-treatment placement decisions at issue in *Jackson,* decisions regarding whether to grant or deny eligible inmates a sentence reduction under § 3621(e) remain within the Bureau's discretion. The district courts may recommend that particular prisoners receive drug rehabilitation while incarcerated; however, they may not order such treatment. *Jackson,* 70 F.3d at 878. Similarly, a reasonable inference exists that district courts may recommend to the Bureau that a particular inmate's sentence be reduced one year based upon successful completion of a drug-treatment program. The courts may not order the Bureau to grant such reductions.

■ Accordingly, under ordinary circumstances the proper relief would be to remand to the Bureau for reconsideration in light of our conclusion that Downey is eligible for a sentence reduction. However, the record indicates that the only obstacle to eligibility for, and entitlement to, a sentence reduction in Downey's case was a question of law. We have concluded that the Bureau's statutory interpretation of § 3621(e)(2)(B) is in error as a matter of law. Given that remanding this case to the Bureau would entail only a ministerial act by the Bureau, we affirm the district court's grant of Petitioner's Writ of Habeas Corpus and sentence-reduction order.

AFFIRMED.