**Nello L. GRASSI, Petitioner–Appellee,**

v.

**Robert HOOD, Warden, Federal Correctional Institution, Sheridan, Oregon, Respondent–Appellant.**

No. 00–35275.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 2001

Filed May 16, 2001

Thomas M. Gannon, Department of Justice, Washington, D.C., for the respondent-appellant.

Stephen R. Sady, Chief Deputy Public Defender, Portland, Oregon, for the petitioner-appellee.

Before: T.G. NELSON, GRABER, and RAWLINSON, Circuit Judges.

GRABER, Circuit Judge:

The district court granted petitioner Nello L. Grassi's petition for habeas corpus. The government appeals. We review de novo, *Bowen v. Hood,* 202 F.3d 1211, 1218 (9th Cir.2000), and we reverse.

FACTS AND PROCEDURAL HISTORY

In January 1999, Petitioner was convicted in federal court of conspiring to manufacture and distribute marijuana in violation of 21 U.S.C. §§ 841 and 846. He was sentenced to 60 months in prison, to be followed by five years of supervised release.

Petitioner was incarcerated in federal prison in Sheridan, Oregon. He asked to be admitted to the prison's residential drug abuse treatment program, and he was accepted. Nonetheless, prison officials determined that he was *not* eligible for early release under 18 U.S.C. § 3621(e)(2)(B), which applies to prisoners who have been "convicted of ... nonviolent offense[s]," because he had received a two-level sentence enhancement under U.S.S.G. § 2D1.1 for carrying a gun during his crime of conviction.

On August 3, 1999, Petitioner filed a petition for habeas corpus. In that petition, he asserted that he had been denied early release pursuant to Bureau of Prisons (BOP) Program Statement 5162.04, "which categorically disqualified prisoners who received a two-point sentencing enhancement under U.S.S.G. 2D1.1." He further noted that the District of Oregon had held in an earlier case, *Gavis v. Crabtree,* 28 F.Supp.2d 1264 (D.Or.1998), that "Program Statement 5162.04's categorization of [his] offense as not nonviolent violated the plain meaning of the statute and controlling precedent." Because the district court had invalidated the program statement in *Gavis,* Petitioner argued, he was entitled to early release under 18 U.S.C. § 3621(e).

The district court granted the petition, relying on *Gavis* and on this court's opinion in *Downey v. Crabtree,* 100 F.3d 662 (9th Cir.1996). The government then brought this timely appeal.

DISCUSSION

Under 18 U.S.C. § 3621(e)(2), the BOP may reduce, by as much as one year, the sentence of a federal prisoner who (1) has been "convicted of a nonviolent offense" and (2) completes a residential substance abuse program. The statute does not,

however, define the term "nonviolent offense."

■ In 1995, the BOP promulgated an interim regulation, codified at 28 C.F.R. § 550.58, which defined the term with reference to the term "crime of violence" in 18 U.S.C. § 924(c)(3). The BOP also issued Program Statement 5162.02, which provided a more extensive list of offenses that would not qualify as "nonviolent offenses" for purposes of the early-release program. A "program statement" is "an internal agency guideline . . . which is akin to an 'interpretive rule' that 'do[es] not require notice and comment.'" *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995)). Because program statements are not subject to the rigors of the Administrative Procedure Act (APA), they are not entitled to the degree of deference that courts give to published agency regulations; however, they are "still entitled to some deference." *Id.; accord Christensen v. Harris County*, 529 U.S. 576, 577, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). As relevant to this appeal, both the 1995 interim regulation and the 1995 program statement defined "crimes of violence" to include drug-trafficking convictions in which the offender received a two-level enhancement under U.S.S.G. § 2D1.1 for possessing a dangerous weapon during the commission of a drug offense.

The circuits were split as to the validity of that provision of 28 C.F.R. § 550.58 and the 1995 program statement; this circuit rejected its validity in *Downey*, 100 F.3d at 668. The BOP then issued a revised program statement and an amended interim regulation.

First, on October 9, 1997, the BOP issued Program Statement 5162.04. That program statement does not define the term "nonviolent offense." Rather, it states:

> As an exercise of the discretion vested in the Director [of the BOP], an inmate serving a sentence for an offense that falls under the provisions described below shall be precluded from receiving certain Bureau program benefits [including the sentence-reduction benefit at issue here].

> Inmates whose current offense is a felony that:

> .    .    .    .    .

> • involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)[.]

A few days later, on October 15, 1997, the BOP published an amended version of 28 C.F.R. § 550.58 which, in relevant part, is almost identical to the 1997 program statement quoted above. 62 Fed.Reg. 53690. That amended interim regulation provided for public comment until December 15, 1997; however, the regulation's effective date was October 9, 1997. *Id.*

As relevant here, the 1997 program statement and interim regulation both have the same effect as their 1995 predecessors had. Both categorically exclude from the early-release provision of 18 U.S.C. § 3621(e) inmates, like Petitioner, who possessed firearms in connection with certain drug offenses. But rather than accomplishing that result through a definition of "nonviolent offense," the 1997 program statement and interim regulation both rely on the discretion to grant or deny early release that 18 U.S.C. § 3621(e) vests in the BOP.

A number of prisoners challenged the 1997 program statement and interim regulation in district court. Several district courts in this circuit held that the program

statement and interim regulation were invalid; among them was the District of Oregon, in *Gavis*. As noted, the district court followed *Gavis* in this case.

After the government filed its notice of appeal in this case, but before briefing, this court reversed *Gavis* and a number of other cases that had reached the same result. *Bowen*, 202 F.3d at 1220. In *Bowen*, the court considered the categorical exclusion implemented by Program Statement 5162.04 and the 1997 interim regulation and concluded that the exclusion was permissible as an exercise of the BOP's discretion under 18 U.S.C. § 3621.[1] *Id.*

At the time, the circuits were split on the validity of the 1997 program statement and regulation. However, the Supreme Court later resolved the split by holding, as the *Bowen* court had, that the categorical exclusion embodied in the program statement and rule was permissible under 18 U.S.C. § 3621. *Lopez v. Davis*, 531 U.S. 230, 121 S.Ct. 714, 724, 148 L.Ed.2d 635 (2001).

■ The only claim that Petitioner raised in his petition for habeas corpus was the claim that, under *Gavis*, "Program Statement 5162.04's categorization of Mr. Grassi's offense as not nonviolent violated the plain meaning of the statute and controlling precedent interpreting Section 3621(e)." That claim was the sole basis for the district court's grant of habeas corpus. As Petitioner acknowledges, however, *Bowen* disposes of that argument; and the Supreme Court affirmed the validity of *Bowen* in *Lopez*. Accordingly, the district court erred in granting habeas corpus relief to Petitioner.

■ Petitioner argues, however, that we should affirm the district court on the alternate ground that the 1997 interim regulation was promulgated without an adequate opportunity for notice and comment, in violation of the APA. In *Lopez*, the Supreme Court declined to address that legal question. 121 S.Ct. at 724 n. 6.

Assuming that the question is properly before us, we decline to affirm the district court on that alternate ground. Petitioner's argument under the APA addresses the procedural validity of the interim regulation only. But the BOP promulgated *two* independent documents that announced the categorical exclusion applied to Petitioner. One is the interim regulation. The other, Program Statement 5162.04, was issued on October 9, 1997, before the amended interim regulation was published in the Federal Register.[2]

Even if the 1997 interim regulation were invalid because the BOP did not comply with the "notice and comment" requirements of the APA, the program statement, which predated the amended rule, would remain viable. The 1997 program statement never was rescinded, nor is it expressly superseded by the later 1997 interim regulation. Thus, a holding that the amended rule was invalid on procedural grounds would have no effect on the continuing validity of the earlier-published program statement. Under *Bowen*, the denial of Petitioner's request for early release was proper under the program statement, notwithstanding the BOP's alleged failure to comply with the APA with respect to the 1997 interim rule. Accordingly, regardless of the outcome of Petition-

---

1. The court also concluded that the 1997 program statement and rule could not be validly applied to prisoners who already had been accepted into the early-release program before the program statement and regulation were enacted. *Bowen*, 202 F.3d at 1222. That holding is not relevant here, because Petitioner does not fall into that category, having not been convicted and incarcerated until 1999.

2. Petitioner does not challenge the procedural regularity of Program Statement 5162.04.

er's challenge to the interim rule under the APA, he is ineligible for early release. In the circumstances, we decline to issue an advisory opinion on the procedural validity of the 1997 amended rule.[3]

REVERSED.

**3.** On December 22, 2000, the BOP promulgated a final version of amended 28 C.F.R. § 550.58. 65 Fed.Reg. 80745. The 1997 interim rule that Petitioner challenges has been superseded.