Gary Lee GUNDERSON, Petitioner–
Appellant,

v.

Robert A. HOOD, Warden,
Respondent–Appellee.

Nos. 00–36102, 01–35535

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 2001.

Filed Oct. 23, 2001.

Stephen R. Sady, Assistant Federal Public Defender, Pórtland, Oregon, for the appellant.

Kenneth C. Bauman and Thomas M. Gannon, Assistant United States Attorneys, Portland, Oregon, for the appellee.

Before: WALLACE, HALL, and T.G. NELSON, Circuit Judges.

## OPINION

T.G. NELSON, Circuit Judge:

Federal prisoner Gary Lee Gunderson contends that because the Bureau of Prisons ("BOP") Program Statement 5162.04 is inconsistent with BOP regulations and has a substantive effect upon him, the BOP may not employ it to deny him early release as a result of his drug rehabilitation program participation. We do not agree that the program statement is substantive rather than interpretive as applied to him. Accordingly, we affirm the district court.

# I.

## BACKGROUND AND DISTRICT COURT PROCEEDINGS

### A. *Evolution of the Challenged Program*

█ Title 18 U.S.C. § 3621(e)(2)(B) authorizes the BOP to reduce the sentence of prisoners "convicted of a nonviolent offense" by up to one year if the prisoner successfully completes a residential substance abuse program. Section 3621(e)(2)(B) does not define the term "nonviolent offense." In 1995, the BOP promulgated an interim regulation to fill in this gap. The regulation, codified at 28 C.F.R. § 550.58 (1995), equated "nonviolent offense" with every offense that did not fit within "crime[s] of violence" contained in a different section, 18 U.S.C. § 924(c)(3).[1] Around the same time, the BOP issued Program Statement 5162.02.[2] That program statement provided a more extensive list of offenses that would not qualify as "nonviolent offenses" under the BOP's statutory construction of that term.[3]

In *Downey v. Crabtree*,[4] we rejected the statutory construction embodied in the 1995 regulation and program statement. Then in 1997 the BOP took a different tack in Program Statement 5162.04,[5] which was entitled "Categorization of Offenses" and was to assist in implementing various BOP programs. Section 6 of the statement listed criminal offenses that are crimes of violence in all cases, while Section 7 listed offenses that, at the director's discretion, may preclude certain BOP benefits. The introduction to Section 7 provides in relevant part:

> *As an exercise of the discretion vested in the Director* [of the BOP], an inmate serving a sentence for an offense that falls under the provisions described below shall be precluded from receiving certain Bureau program benefits [including the sentence-reduction benefit at issue here].
>
> Inmates whose current offense is a felony that:
>
> . . . . .
>
> • "involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device)";
> • "by its nature or conduct, presents a serious potential risk of physical force against the person or property of another."[6]

Section 7 then goes on to describe several categories of offenses that would presumably fall within the standard listed in the introduction. One of these categories, found under subsection e, is entitled "Special Circumstances" and contains a provision that "all offenses under 18 U.S.C. § 922(g) shall preclude an inmate from receiving certain Bureau program benefits."[7] That provision of the Code makes it unlawful for certain persons to possess any firearm or ammunition.

Six days after issuing Program Statement 5162.04, the BOP published an amended version of the regulation, which was again codified at 28 C.F.R. § 550.58.

---

1. See 60 Fed.Reg. 27,692–27,695.

2. A program statement is an "internal agency guideline ... which is akin to an interpretive rule that do[es] not require notice and comment." *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (internal quotation marks and citation omitted).

3. A Bureau of Prisons Program Statement No. 5162.02, § 9 (July 25, 1995).

4. 100 F.3d 662 (9th Cir.1996).

5. A Bureau of Prisons Program Statement 5162.04 (Oct. 9, 1997) ("Program Statement 5162.04").

6. *Id.* at § ,7 (emphasis added).

7. *Id.* at § 7(e).

The new version of the regulation embodied the same discretionary approach as the new program statement.[8] It stated that, as an exercise of the director's discretion, certain categories of inmates were not eligible for early release. Included within those categories were:

(vi) Inmates whose current offense is a felony:

. . . . .

(B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), or

(C) That by its nature or conduct, presents a serious potential risk of physical force against the person or property of another.[9]

Thus, the new regulation and program statement have the same effect as their predecessors. However, they achieve that effect through very different means. The new versions' categorical exclusion of certain prisoners from early release under § 3621(e) is based on an exercise of the BOP director's discretion rather than on the BOP's statutory construction of the term "nonviolent offense."

Several prisoners challenged the regulation and program statement's new approach. Initially, they met with some success. In *Gavis v. Crabtree*,[10] the district court held both the 1997 regulation and the program statement to be invalid. However, we reversed *Gavis* in *Bowen v.*

*Hood*[11] and expressly held that 18 U.S.C. § 3621 authorizes the BOP to exercise its discretion in the manner embodied by the new regulation and program statement.[12] The Supreme Court subsequently approved of *Bowen* in *Lopez v. Davis*.[13] Thus, it is quite clear that the 1997 regulation and program statement are substantively sound.

It is not clear, however, that the 1997 regulation and program statement are immune from attack on procedural grounds. In *Lopez*, an *amicus* argued that the 1997 regulation was invalid because the BOP did not comply with the requirements of the Administrative Procedure Act ("APA")[14] during promulgation. The Supreme Court refused to consider the argument because it had not been raised in the court of appeals nor included in the petition for certiorari.[15] In *Grassi v. Hood*,[16] the petitioner tried to raise the issue before us, but we also declined to reach it because he had not challenged the program statement which accompanied the regulation and compelled the same result.[17]

## B. *Gunderson's Challenge*

Gunderson was convicted of being a previously convicted felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to thirty-seven months' incarceration. While housed in federal facilities in Oregon, the BOP admitted Gunderson to its drug treatment program. However, the BOP informed Gunderson that, under Program

---

**8.** 62 Fed.Reg. 53,690–53,691. The amended regulation allowed for public comment until December 15, 1997, but its effective date was October 9, 1997. *Id.* at 53,690.

**9.** 28 C.F.R. § 550.58 (1997).

**10.** 28 F.Supp.2d 1264 (D.Or.1998).

**11.** 202 F.3d 1211 (9th Cir.2000).

**12.** *Id.* at 1218.

**13.** 531 U.S. 230, 238, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001).

**14.** 5 U.S.C. § 551 *et seq.*

**15.** 531 U.S. at 244 n. 6, 121 S.Ct. 714.

**16.** 251 F.3d 1218 (9th Cir.2001).

**17.** *Id.* at 1221 n. 2.

Statement 5162.04, he was not eligible for early release under § 3621(e)(2)(B) because of the nature of his conviction (a felony under 18 U.S.C. § 922(g)). Gunderson chose to participate in the program despite the BOP's proviso. He has completed the initial 500–hour residential phase of the program and should complete the final phase shortly before his scheduled release late this year.

Gunderson filed a petition for writ of habeas corpus. In contrast to the petitioner in *Grassi*, Gunderson challenged the new program statement but not the new regulation.[18] He argued that because the program statement denies him a benefit that the regulation, standing alone, would not, the program statement is substantive as applied to him and thus must comport with the requirements of the APA.

The district court originally stayed the case. After removing the stay, the district court held that the program statement was a fair interpretation of 18 U.S.C. § 3621(e)(2)(B). Accordingly, the district court denied Gunderson's petition,[19] and Gunderson appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## II.

## ANALYSIS

### A. *Mootness*

■ Gunderson will not complete the final phase of the early release program until his scheduled release date. Therefore, it is not possible for the Department of Corrections to release Gunderson from physical confinement prior to his serving his full sentence even if he completes the drug program. However, this fact does not render the case moot because there is a possibility of the court's reducing or modifying his supervised release under 18 U.S.C. § 3583(e)(2).

Gunderson argues that the court could shorten the period of his supervised release under 18 U.S.C. § 3583(e)(1), (2) or *Johnson v. Williford.*[20] To invoke § 3583(e)(1), which allows the court to terminate the term of supervised release, the defendant must have completed one year of supervised release. Gunderson is not yet eligible to invoke that provision. However, § 3583(e)(2) allows the court to modify or reduce the conditions of supervised release at any time. Therefore, it is possible for Gunderson to receive relief in the form of a reduced or modified term of supervised release. Because § 3583(e)(2) provides possible relief, we do not need to decide whether this case fits the narrow confines of a situation calling for equitable estoppel under *Johnson v. Williford.*

### B. *The Program Statement*

■ Gunderson argues that because Program Statement 5162.04 denies early release to anyone convicted under 18 U.S.C. § 922(g), it expands the scope of BOP's regulation and denies him a benefit that the corresponding regulation, standing alone, would not. Therefore, it is substantive as applied to him and thus must comport with the procedural requirements of the APA.

■ The APA requires that rules[21]

---

**18.** Gunderson asserts that he is categorically eligible under the new regulation. We express no view on the validity of this proposition.

**19.** Gunderson originally appealed the district court's stay order. We held that the stay had become moot. Gunderson returned to dis-

trict court and obtained the final order which we consider here.

**20.** 682 F.2d 868 (9th Cir.1982).

**21.** The APA defines a rule as "the whole or part of an agency statement of general or particular applicability and future effect de-

promulgated by administrative agencies undergo certain procedures unless those rules are "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." [22] Courts have struggled with identifying the difference between "legislative rules" and "interpretive rules." Generally, agencies issue interpretive rules to clarify or explain existing law or regulations so as to advise the public of the agency's construction of the rules it administers. [23] If a rule is inconsistent with or amends an existing legislative rule, then it cannot be interpretive. [24] Such a rule would impose new rights or obligations by changing an existing law and must follow the applicable procedures of the APA. Whether an agency pronouncement is interpretive or substantive is a legal question that we review de novo. [25]

 There is no question that the 1997 *regulation* is substantive. It clearly "effect[ed] a change in existing law or policy" [26] by listing categories of inmates who would not be eligible for the early release program. The question thus becomes, what did the new program statement do? [27] We hold that because the program statement is not inconsistent with the regulation, it is a valid interpretive rule.

The program statement can be considered a clarification or explanation of subsection (a)(vi) of the regulation. That subsection denies eligibility to an inmate whose offense was a felony that involved possession of a firearm, a dangerous weapon, or explosives, including any explosive material or explosive device. [28] The regulation itself does not provide definitions for the terms "explosives" or "explosive device." Gunderson argues that a conviction for possession of ammunition, under 18 U.S.C. § 922(g), would not fall within the ambit of possession of explosives because ammunition is not the same as explosives. We do not think the definition of explosives is so clear as to render the program statement inconsistent.

Different statutes use varying definitions of explosives, creating ambiguity as to what constitutes an explosive device. For example, 18 U.S.C. § 921(a)(17)(A) defines "ammunition" to include "propellant

---

signed to implement, interpret or prescribe law or policy." 5 U.S.C. § 551(4).

**22.** *Id.* § 553(b)(3)(A). The procedural requirements for all non-exempt rules include public notice, opportunity for public comment, and publication in the Federal Register. *Id.* § 553(b), (c).

**23.** *D.H. Blattner & Sons, Inc. v. Secretary of Labor, Mine Safety, and Health Administration,* 152 F.3d 1102, 1109 (9th Cir.1998) (internal quotation omitted); *Chief Probation Officers of California v. Shalala,* 118 F.3d 1327, 1333 (9th Cir.1997) (*citing Shalala v. Guernsey Mem. Hosp.,* 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995)).

**24.** *Blattner & Sons,* 152 F.3d at 1109; *Shalala,* 118 F.3d at 1332–33.

**25.** *Southern Cal. Aerial Advertisers' Ass'n v. F.A.A.,* 881 F.2d 672, 677 (9th Cir.1989).

**26.** *Blattner & Sons,* 152 F.3d at 1109 (internal quotation omitted).

**27.** The BOP argues that this question is superfluous. It contends that because program statements are by definition "interpretive" there are no circumstances under which they must be subjected to notice and comment proceedings. This circular argument simply begs the question. Program statements are supposed to be interpretive, but that does not mean that they always are. The label an agency attaches to its pronouncement is clearly not dispositive. *See, e.g., Pickus v. United States Bd. of Parole,* 507 F.2d 1107, 1112 (D.C.Cir.1974); *Prows v. Department of Justice,* 704 F.Supp. 272, 274 (D.D.C.1988), *aff'd on other grounds,* 938 F.2d 274 (D.C.Cir. 1991).

**28.** 28 C.F.R. § 550.58(a)(vi) (1997).

powder"[29] and 18 U.S.C. § 841(d) includes "black powder" and "pellet powder" as types of explosives, creating an inference that ammunition is an explosive. In addition, 18 U.S.C. § 844(j) contains a broad definition of explosives, including gunpowders and any mechanical mixtures or devices that may cause an explosion. However, when dealing with crimes and their punishment in 18 U.S.C. § 845, Congress specifically excluded small arms cartridges from the definition of "explosive material" in 18 U.S.C. § 841. The fact that these statutes are not precise in their definitions of explosives means that there is a genuine ambiguity arising from the wording of the regulation. Clarifying such regulatory ambiguities is "precisely the function of an interpretative rule."[30]

Additional evidence of the ambiguity of the word "explosives" is found in *United States v. Davis*.[31] That case involved the question of whether the discharge of a handgun was a "use of explosives." The Fourth Circuit held that it was, using 18 U.S.C. § 844(j) as its guiding principle for the definition of "explosive" and finding that ammunition in a loaded handgun is an "explosive" under § 844(j).[32] The dissent took objection to this characterization and denounced the majority's opinion equating the shooting of a gun with the use of explosives.[33] The sharply divided viewpoints within *Davis* concerning the meaning of "explosive" indicates that the term does not have a clear meaning.

We need not, and do not, decide whether "ammunition" is an "explosive material" as that term is used in 28 C.F.R. § 550.58. The necessarily technical argument summarized above convinces us that, as applied to Gunderson, the program statement is performing its stated purpose of "assist[ing] in the implementation of various .... policies and programs."[34] This court in *Bowen* held that the BOP has broad discretion in administering the sentence reduction treatment program and created reasonable categorical exclusions in its regulation and program statement.[35] The regulation focused on excluding felons who may be dangerous to the public through the use of physical force or a weapon. The program statement just helped identify dangerous felons by including those convicted for possession of ammunition. The BOP is using its program statement to advise the public how it is interpreting its own regulation. Because, in this instance, Program Statement 5162.04 did no more than "clarify or explain existing law,"[36] it was interpretive and thus not subject to the rigors of the APA. For this reason, the district court did not err in dismissing Gunderson's petition.

AFFIRMED.

---

**29.** 18 U.S.C. § 921(a)(17)(A).

**30.** *Warder v. Shalala,* 149 F.3d 73, 80 (1st Cir.1998).

**31.** 202 F.3d 212 (4th Cir.2000).

**32.** *Id.* at 218–19.

**33.** *Id.* at 221–23.

**34.** Program Statement 5162.04 at § 1.

**35.** *Bowen v. Hood,* 202 F.3d 1211, 1219 (9th Cir.2000).

**36.** *Linoz v. Heckler,* 800 F.2d 871, 877.