*1009 BEEZER, Circuit Judge,
concurring.
I concur in the opinion of the court. The last time this consolidated appeal was before us, I wrote separately to observe a tension in our case law over the application of the Administrative Procedures Act (“APA”) to a Bureau of Prison’s Program Statement. See Grier v. Hood, 46 Fed.Appx. 433, 440 (9th Cir.2002) (Beezer, J., concurring). I write separately once again to note that this tension remains unresolved.
I
This court’s invalidation of the Bureau’s 1997 interim regulation marks the culmination of a series of challenges to the Bureau’s actions that year concerning prisoner eligibility for an early release program. The Bureau detailed the eligibility criteria for this program in two separate documents, issued within a week of each other in 1997. See Gunderson v. Hood, 268 F.3d 1149, 1151 (9th Cir.2001). The documents consisted of an interim regulation and a new Program Statement. Prisoners have been arguing with the Bureau over the validity of these documents, which the government on appeal refers to collectively as the “1997 interim rule,” ever since.
The first challenges to the 1997 interim rule were on substantive grounds. Prisoners argued that the Bureau exceeded its discretion in establishing certain early release requirements. We held that the 1997 actions were a proper use of the Bureau’s discretion. Bowen v. Hood, 202 F.3d 1211, 1220 (9th Cir.2000). The Supreme Court agreed. See Lopez v. Davis, 531 U.S. 230, 238, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001).
Prisoners next challenged the procedural validity of the interim rule. The first challenge occurred in Grassi v. Hood, 251 F.3d 1218 (9th Cir.2001). We construed the petitioner in Grassi as contesting whether the 1997- interim regulation complied with APA procedural requirements. Id. at 1221. We declined, however, to decide that issue because the petitioner failed to also challenge the procedural validity of the 1997 Program Statement, an “independent document[]” that, as relevant here, separately excluded from the early release program the same class of prisoners described in the interim regulation. Id. We held that the petitioner was not entitled to relief because the interim regulation’s compliance with the APA had “no effect” on the “continuing validity” of the Program Statement. Id. at 1221-22.
Given this result, it is perhaps not surprising that the 1997 Program Statement itself next became the subject of an APA challenge. We held in Gunderson v. Hood, 268 F.3d 1149, 1155 (9th Cir.2001), that the 1997 Program Statement need not comply with the APA because it was merely interpreting a substantive regulation (the 1997 interim regulation) that was subject to the APA. Far from reading the Program Statement as a separate authority capable of outlining a policy for disqualifying prisoners independent of the interim regulation, we concluded that the Program Statement “did no more than clarify or explain existing law.” Id. (internal quotation marks and citation omitted). We again denied relief to the prisoner.
II
These prior cases set the stage for the present lawsuit. The goal of the current petitioners, like that of the petitioners in Grassi and Gunderson, is to invalidate the application of the 1997 Bureau policy to their prison sentences.[1] The difference, of course, between the previous challenges and this one is that here we hold in favor *1010 of the petitioners. .But I note that in so holding, we once again avoid addressing the tension between Grassi and Gunder-son. In particular, we do not explain how invalidating the interim- regulation ‘qualifies these petitioners for relief when, under Gunderson, the Program Statement is not itself subject to the APA procedural requirements and, under Grassi, remains an adequate basis for excluding prisoners from the early release program, independent of the interim regulation. See 46 Fed.Appx. at 441 (Beezer, J., concurring).
There is a simple answer to this question, at least as far as the cases before us are concerned: no one on appeal challenges the district court’s conclusion that “the program statement[] may not be used to deny petitioner[s] early release.” Bohner v. Daniels, 243 F.Supp.2d 1171, 1179 (D.Or.2003).[2] I remain'unconvinced that the language in Grassi supports this conclusion, but recognize that any other solution may be even more at odds with either Grassi or Gunderson. More importantly, by not contesting this point of the district court’s holding, the government appears to concede that Grassi does not prevent us from granting relief to the petitioners. I see no reason to take issue with such a concession.

. As noted in the opinion of the court, the 1997 policy was not the agency's first attempt *1010 to disqualify from the early release program prisoners incarcerated for crimes involving the possession of a firearm. But it was the first regulation held to be a substantively valid basis for excluding this class of prisoners. See Bowen, 202 F.3d at 1217 (discussing Davis v. Crabtree, 109 F.3d 566 (9th Cir.1997); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir.1996)). It is this fact that makes the procedural challenge here so important to the current petitioners.

. The court reasoned that for the 1997 Program Statement to be capable of independently barring relief to petitioners as per Grassi, the Program Statement must be treated as a "legislative rule,” which would require compliance with APA procedures. See Bohner, 243 F.Supp.2d at 1178-79. The Bureau’s failure to follow these procedures prevented it from relying on this argument. Alternatively, under Gunderson, if it was not necessary for the Program Statement to comply with the APA, it must be because the Program Statement is dependent on the validity of the interim regulation that gives it legitimacy. See id.