**Deborah E. BENTON, Petitioner,**

v.

**John A. ASHCROFT, attorney general; United States Department of Justice; and Federal Bureau of Prisons, Respondents.**

**No. 03 CV 0270 BTM(LSP).**

United States District Court, S.D. California.

July 25, 2003.

Shereen J. Charlick, Federal Defenders of San Diego, San Diego, CA, for Petitioner.

Carol C. Lam, U.S. Attorney, Mark R. Rehe, Assistant U.S. Attorney, U.S. Attorneys Office Southern District of California

Criminal Division, San Diego, CA, for Respondents.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

MOSKOWITZ, District Judge.

### I. INTRODUCTION

On September 27, 2002, petitioner Deborah Benton pled guilty to one count of mail fraud in violation of 18 U.S.C. § 1341. At the December 23, 2002, sentencing hearing, the Court determined petitioner's offense level to be 10, thereby falling within Zone C of the United States Sentencing Guidelines. Pursuant to the guidelines, petitioner was sentenced to five months imprisonment and five months of home confinement. The Court recommended that the custodial part of the sentence be served at the Urban Work Camp. Petitioner's self surrender date was set for February 21, 2003.

On December 13, 2002, Deputy Attorney General Larry Thompson was advised, through a memorandum prepared by the Department of Justice's Office of Legal Counsel, that the Bureau of Prisons' ("BOP") long-standing policy of interpreting the term "imprisonment" to encompass community confinement was unlawful. According to the memorandum, U.S.S.G. § 5C1.1 vests only limited authority in the sentencing court to designate an offender to community confinement after having sentenced him to a term of imprisonment. Further, the federal circuit courts addressing the issue have uniformly distinguished between "imprisonment" and "community confinement." Therefore, the memorandum concluded that it would be unlawful for a federal district court to order that the custodial portion of a Zone C or D sentence be served through community or home confinement. Moreover, because a community corrections center is not a place of imprisonment, the BOP does not have discretion pursuant to 18 U.S.C. § 3621(b) to place a Zone C or D offender in community confinement where the sentencing guidelines specify a term of imprisonment.[1] According to the memorandum, "the [BOP's] authority to select the *place* of imprisonment is not the same as the authority to decide *whether* the offender will be imprisoned." (Emphasis in the original).

By a memorandum dated December 20, 2002, Kathleen Hawk Sawyer, the Director of the Bureau of Prisons, informed federal judges of the BOP's procedural change regarding the direct placement of offenders in community confinement centers. The memorandum stated that effective immediately, the BOP would no longer honor the sentencing judge's recommendation to place inmates in community confinement for the custodial portion of the sentence. In addition, the procedural change would be applied retroactively to those inmates who had been designated to community confinement centers and who, as of December 16, 2002, had more than 150 days remaining on the custodial portion of their sentences. At the time of Benton's sentencing, the Court was not yet aware of the new BOP policy.

On January 23, 2003, petitioner was informed by the BOP that she had been designated to serve the custodial portion of her sentence at FCI Victorville. On February 7, 2003, petitioner filed an application for a preliminary injunction and a petition for writ of habeas corpus, seeking to enjoin the BOP from designating her to FCI Victorville pursuant to the new policy.

---

**1.** 18 U.S.C. § 3621(b) provides that, "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correc-

tional facility that meets minimum standards of health and habitability established by the Bureau...."

On February 21, 2003, this Court denied the application for a preliminary injunction, stayed petitioner's surrender date and issued an order to show cause why the petition for writ of habeas corpus should not be granted.

## II. DISCUSSION

Benton attacks the decision of the BOP designating her to a federal correction institution (FCI Victorville). She contends that under 18 U.S.C. § 3621(b), the BOP has discretion to designate her to serve her sentence of imprisonment in community confinement. She relies on the recommendation of the Court that she serve her sentence in the Urban Work Camp.

The Court sentenced Benton to five months imprisonment in the custody of the BOP. The Court *did not* recommend that she serve her sentence in community confinement in general. Rather, the Court recommended that she serve her sentence in the Urban Work Camp. While inmates participating in the Urban Work Camp resided in community confinement centers they were nevertheless in custody. Their privileges were more restricted than those in regular community confinement in that they had to work at one of two government facilities doing labor that benefits the Border Patrol (Imperial Beach project) or the Navy (North Island Naval Air Station project). The Court recognized that Benton may not be accepted into the program given her prior convictions. Sentencing TR, December 23, 2002, at 64. If the Defendant was not accepted for the Urban Work Camp, the Court recommended that she serve her five months of imprisonment at FCI Dublin. *Id.* at 68. It appears that Benton would not have been ineligible for the Work Camp due to her convictions. The Court did not recommend that she serve her sentence in community confinement in general. Indeed, the structure of the sentence was that she receive five months imprisonment and five months

home confinement. *See*, Sentencing TR at 66.

Three days prior to sentencing, the BOP eliminated direct placement to community confinement centers as satisfying a sentence of imprisonment. This resulted in the effective termination of the San Diego Urban Work Camp. Had the Court known this at the time of sentencing, it would not have altered the sentence other than not recommending placement in the Urban Work Camp. No other departures would have been granted as it was the Court's intention that Benton serve five months imprisonment.

Since the Urban Work Camp no longer exists, the question before the Court is whether the BOP's change in interpretation of § 3621(b) violates Benton's alleged right to have the BOP discretionarily place her in community confinement for the service of her five month sentence, notwithstanding that such was and is not the recommendation of this Court.

Since the implementation of the BOP's procedural change, several district courts have addressed various statutory and constitutional challenges to the new BOP rule, with varying results. The parties are familiar with all the cases and they need not be listed here. In this petition for writ of habeas corpus, petitioner argues that the BOP's interpretation of 18 U.S.C. § 3621(b) constitutes an erroneous reading of the statute, and should be given no deference pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). She further contends that the procedural change violates the Administrative Procedures Act, because the BOP failed to provide a 30–day notice and comment period. Petitioner also contends that the retroactive application of the procedural change violates the *Ex Post*

*Facto* Clause and constitutes an impermissible retroactive application.

### a. *Jurisdiction*

■ By its February 21, 2003, order, this Court issued an order to show cause why the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 should not be granted. Benton is effectively in custody as she is on bail and subject to an order to surrender. *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984) (for purposes of federal habeas corpus statutes, petitioner was in "custody" even though his conviction was vacated when he applied for trial *de novo* and he had been released on personal recognizance); *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (release on own recognizance after conviction while awaiting sentencing, and had exhausted state remedies is in custody). Because petitioner challenges the terms and conditions of her confinement, the petition was properly brought pursuant to § 2241. *Preiser v. Rodriguez,* 411 U.S. 475, 485–86, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[2]

### b. *Statutory Construction and Chevron Deference*

The Office of Legal Counsel advised Deputy Attorney General Thompson that a "term of imprisonment" requires designation of a sentenced offender to a prison facility under § 3621(b), and that placement in a community corrections center does not qualify as imprisonment. Petitioner argues that the BOP's reading of the statute is contrary to its plain language and legislative history. In addition, petitioner contends that no deference should

be accorded the BOP's new interpretation of § 3621(b), because the interpretation is unreasonable and the reasons underlying the procedural change are flawed. The Government contends that the new interpretation is both reasonable and well-founded in the law.

■ Where "Congress has directly spoken to the precise question at issue," so that the "intent of Congress is clear," both courts and administrative agencies are bound by Congress' command, *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Where the statutory language is silent or ambiguous on the specific issue, deference is accorded the agency's interpretation so long as it is based on a permissive construction of the statute. *Id.* at 843, 104 S.Ct. 2778. Congress may expressly or implicitly delegate to an administrative agency the power to interpret a statute. The interpretation of a regulation promulgated pursuant to expressly delegated authority is given controlling weight, unless arbitrary, capricious or manifestly contrary to the statute. *Id.* at 843–44, 104 S.Ct. 2778. Where the delegation of interpretative authority is implicit, courts must give deference to any interpretation that is reasonable, in the agency's view, in the context of the particular program subject to the regulation. *Id.* at 844–45, 104 S.Ct. 2778.

■ Although the BOP's policy change is not a published regulation, it is entitled to some deference where it constitutes "a permissive construction of the statute." *Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct.

---

**2.** In the alternative, petitioner asks this Court to construe the application as one under 28 U.S.C. § 2255. Because petitioner has not alleged that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" petitioner is not entitled to relief under § 2255. *See Preiser,* 411 U.S. at 485–86, 93 S.Ct. 1827.

2021, 132 L.Ed.2d 46 (1995), *citing Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. However, the ultimate determination of the meaning of a statute is for the courts to resolve. *Downey v. Crabtree*, 100 F.3d 662, 666 (9th Cir.1996). In assessing the propriety of the BOP's new interpretation, the Court must determine the meaning of the contested word or phrase from the context in which it was used. *Koray*, 515 U.S. at 56, 115 S.Ct. 2021. Section 3621 was enacted as a part of the Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, ch. II, 98 Stat.1987. Because Congress is presumed to have enacted § 3621 with reference to common terms in related legislation, in construing the statute the Court may therefore refer to related provisions of the Sentencing Reform Act. *Koray*, 515 U.S. at 57, 115 S.Ct. 2021.

■ The Sentencing Reform Act, and its legislative history, supports the BOP's new interpretation of § 3621. 18 U.S.C. § 3581(a) provides that a person found guilty of an offense "may be sentenced to a term of imprisonment." The report prepared by the Senate Committee on the Judiciary, after passage of the bill, notes that the Committee did not follow the recommendation submitted by the National Commission, so that in the bill submitted to the Senate floor every offense under the Act may lead to a term of imprisonment. Pub.L. No. 98–473, S. Rep. 98–225, *113 (Aug. 4, 1983). In justifying this departure, the Committee noted that "the shock value of a brief period *in prison* may have significant special deterrent effect." S. Rep. at *114. (Emphasis added). In addition, the Committee specified that "[a] sentence imposed by a judge pursuant to section 3581 will represent the actual period of time that the defendant will spend *in prison* ...." S. Rep. 98–225 at *115. (Emphasis added). Thus, in considering and voting on the Senate bill, the Committee apparently did not contemplate that an offender sentenced to imprisonment would be incarcerated in any facility other than a prison, even if having committed only a minor infraction.

The Sentencing Reform Act further provides that a court may sentence a convicted offender to a term of imprisonment, a term of probation, or to a fine. 18 U.S.C. § 3551(b). The courts, in determining the appropriate sentence under the Act, should seek to achieve the four basic purposes of sentencing: deterrence, incapacitation, just punishment and rehabilitation. Section 3551(a); S. Rep. 98–225 at *67. Importantly, the Sentencing Reform Act stressed that in considering whether to impose a term of imprisonment or the length of such a term, the sentencing Court should recognize that imprisonment is not the appropriate means of promoting correction and rehabilitation. 18 U.S.C. § 3582(a); S. Rep. 98–225 at *76. Rather, in order to achieve correction and rehabilitation, the sentencing court has discretion to confine the defendant to a community corrections facility either as a condition of probation, 18 U.S.C. § 3563(b)(11), or as a condition of supervised release following imprisonment. 18 U.S.C. § 3583(d); *United States v. Bahe*, 201 F.3d 1124, 1131 (9th Cir.2000), *cert. denied*, 531 U.S. 1027, 121 S.Ct. 601, 148 L.Ed.2d 514 (2000).

In the context of supervised release following incarceration, the Ninth Circuit has concluded that a "term of imprisonment" is not equal to confinement in a community treatment center. In *United States v. Bahe*, the court addressed whether confinement to a community treatment center was a permissible condition to a term of supervised release. 201 F.3d 1124 (9th Cir.2000). The court noted that in the enactment of the Mandatory Victims Restitution Act of 1996, Congress renumbered 18 U.S.C. § 3563(b) (enumerating discretionary conditions of probation), without making the corresponding changes to

§ 3583(d) (enumerating discretionary conditions of supervised release) which refers to the conditions listed in § 3563(b), but specifically excludes subsection (b)(11). *Id.* at 1131. Thus, after the renumbering of § 3563(b), § 3583(d) erroneously excluded community confinement, rather than intermittent incarceration, as a discretionary condition of supervised release. *Id.* at 1136. The Ninth Circuit noted that the Senate Committee on the Judiciary had concluded that a term of supervised release cannot be imposed for purposes of incapacitation and punishment, because those purposes would have been served to the extent necessary by the preceding term of imprisonment. *Id.* at 1132, *citing* S. Rep. 98–225 at *125. Thus, whereas intermittent incarceration is punitive in nature and therefore an impermissible condition of supervised release, confinement in a community treatment center is rehabilitative in nature and a permissible condition of such release. *Id.* at 1133.

The Ninth Circuit's reasoning in *Bahe*, read in concert with the Sentencing Reform Act and its legislative history, is consistent with the BOP's new interpretation of § 3621. Congress proscribed intermittent incarceration as a condition to supervised release because such incarceration is punitive, and the punitive aspect of the sentence is satisfied by the offender serving a full term of imprisonment. Congress expressly allowed for confinement to a community corrections center as a condition of supervised release, because such confinement would serve purposes other than punishment. Thus, because a term of imprisonment is punitive in nature, but confinement to a community treatment center is not, Congress could not have intended for a term of imprisonment to be served at a community corrections center.

The express language of § 3621(a) provides that "a person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons ...." Further, the BOP may designate, as the place of the prisoner's imprisonment, "any available penal or correctional facility" that meets the health and habitability standards established by the BOP. 18 U.S.C. § 3621. Petitioner contends that "penal" and "correctional" must define different types of facilities, because otherwise one term of the statute would be rendered superfluous. This contention is not supported by the legislative history, because in explaining the operation of 18 U.S.C. § 3622 related to the temporary release of a prisoner, the Senate Committee used the phrase "correctional facility" to describe a prison.[3] Even assuming that Congress intended for the term "correctional facility" to have a meaning distinct from "penal facility," the legislative history of the Sentencing Reform Act does not support community confinement centers as being encompassed within this term.[4] In conclusion, in view of the Sentencing Reform Act and its legislative history, the Court agrees with the BOP's new interpretation of "term of imprisonment" within the meaning of § 3621.

---

**3.** The report provides that "[t]he Committee does not intend that work release under [section 3622(c) ] be expanded to the extent that it develops into an early release from *prison*. A sentence to imprisonment means confinement in an appropriate *correctional facility* with a program designed to meet the needs of the particular prisoner, considering the purposes of his sentence and his particular needs." S. Rep. 98–225 at *143 (emphasis added).

**4.** In this context, petitioner's reliance on *Reno v. Koray*, 515 U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995); is misplaced, as *Koray* only discussed BOP's interpretation of the term "correctional facility" under § 3621(b), and not Congress' intent in enacting the statute.

Petitioner argues that the BOP's new interpretation is rendered unreasonable by being contrary to its prior, long-standing practice of allowing direct placements of offenders to community corrections centers. But courts have long recognized that an agency must be given latitude to amend its regulations and policies to adapt to changing circumstances. *Rust v. Sullivan,* 500 U.S. 173, 187, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). Thus, the agency must be allowed to consider "varying interpretations and the wisdom of its policy on a continuing basis." *Chevron* at 863–64, 104 S.Ct. 2778. Petitioner also argues that the predecessor to § 3621, former 18 U.S.C. § 4082, expressly defined "facility" to include a residential community treatment center. 18 U.S.C. § 4082(g) (1965). But whereas Congress clearly intended for the BOP to retain the discretion granted under former § 4082(b) to designate the placement of inmates, S. Rep. 98–225 at* 141–42, the legislative history strongly suggests that with the enactment of the Sentencing Reform Act, Congress did not intend for the BOP to designate sentenced offenders to serve a term of imprisonment in any facility other than a prison. Thus, the deletion of former § 4082(g) from the Sentencing Reform Act is further evidence that Congress did not intend for direct placement of sentenced offenders to community corrections centers. *Taylor v. United States,* 495 U.S. 575, 590, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (noting that the omission of a pre-existing definition of a term often indicates Congress' intent to reject that definition, if the legislative history is consistent with such omission).

In conclusion, nothing in the plain language of § 3621(b), or in the legislative history of the Sentencing Reform Act, indicates that Congress intended for an inmate sentenced to a "term of imprisonment" to be directly placed in a community corrections center. Although the BOP's interpretation of "term of imprisonment" is not a published regulation and consequently not entitled to full *Chevron* deference, the interpretation is entitled to some deference as a reasonable construction of the statute. *Koray,* 515 U.S. at 61, 115 S.Ct. 2021. The Court agrees with the BOP's new interpretation and finds that it is not contrary to law.

### c. *Administrative Procedures Act*

Petitioner contends that the BOP's new interpretation of "term of imprisonment" violates the Administrative Procedures Act, because the BOP did not provide for a 30–day notice and comment period. It is petitioner's contention that the BOP's new interpretation of § 3621 falls within the APA because it constitutes agency rulemaking within the meaning of 5 U.S.C. § 551(5). The Government contends that the rule is interpretative rather than substantive, and therefore is exempt from the notice and comment requirements of the APA.

When an agency promulgates substantive rules or regulations, the APA requires prior notice and comment. 5 U.S.C. § 553(b) and (c). Publication is not required where the regulation is an interpretive rule, general statement of policy, or rule of agency organization, procedure or practice. 5 U.S.C. § 553(b)(3)(A). There is no bright line distinction between substantive and interpretative rules. In this Circuit, substantive rules effect a change in existing law or policy; they create law, and are incrementally imposing general, extra-statutory obligations pursuant to authority properly delegated by the legislature. *Alcaraz v. Block,* 746 F.2d 593, 613 (9th Cir.1984) (internal citations omitted). Interpretative rules merely clarify or explain existing law or regulations; they are "essentially hortatory and instructional" in that they go more "to what the administrative officer thinks the statute or regulation

means" when applied in particular, narrowly defined, situations. *Id.* (Internal citations omitted).

■ In this case, the policy statement is interpretative rather than substantive. The interpretation does not create any new law or extra-statutory obligation. Congress granted the BOP the discretion to place sentenced inmates in any available facility, and the BOP has now determined that Congress did not intend for a term of imprisonment to be served in a community corrections center. Thus, the BOP's new policy did not create new law, but rather interpreted existing law. *See, Chrysler Corp. v. Brown,* 441 U.S. 281, 302 n. 31, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (noting that the Attorney General's Manual on the Administrative Procedures Act defines an interpretative rule as a rule issued by an agency "to advise the public of the agency's construction of the statutes and rules which it administers."). Moreover, the BOP's interpretation of § 3621 does not change an existing law or regulation. The new interpretation merely changes a BOP Program Statement that, in itself, is not subject to the requirements of the APA. *Downey v. Crabtree,* 100 F.3d 662, 666 (9th Cir.1996).[5]

Petitioner argues that the interpretation is a legislative rule because of its impact on inmates, sentencing judges and the BOP itself. But the fact that burdens have been imposed on petitioner, the courts or the BOP merely indicates that the interpretation has a substantive impact, not that it created substantive law. *Alcaraz,* 746 F.2d at 613 (holding that even if a regulation may have altered administrative duties or other hardships, it does not make the regulation substantive). In conclusion, because the BOP's new interpretation of "term of imprisonment" is an interpretative rather than substantive rule, it is not subject to the notice and comment requirements of the APA.

d. *The Ex Post Facto Clause and Impermissible Retroactive Application*

Benton argues that the BOP's policy change and revised interpretation of § 3621(b) violates the *Ex Post Facto* Clause of the Constitution and otherwise has an impermissibly retroactive effect. The Court disagrees.

■ The new BOP policy would violate the *Ex Post Facto* Clause if it punished behavior not illegal at the time it was committed or increased the punishment beyond that which was authorized at the time of the offense. *Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). Here, the BOP's new policy and interpretation does neither. Rather, it just changed the type of facility that the BOP could place Benton to serve her sentence of imprisonment. Since Benton's sentence is not increased, there is no violation of the *Ex Post Facto* Clause. *California Department of Corrections v. Morales,* 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995).

---

5. The Court further notes that for purposes of the APA, the new interpretation of § 3621 is not substantively different from other interpretations by the BOP that are contained within the Program Statements and therefore not subject to the APA. For example, the BOP has determined that an inmate is not under "official detention" within the meaning of 18 U.S.C. § 3585(b) when released on bail. *Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995); *see also, Gun-*

*derson v. Hood,* 268 F.3d 1149, 1155 (9th Cir.2001) (holding that a BOP Program Statement defining "explosive material" within the meaning of 28 C.F.R. § 550.58 to include "ammunition" was interpretive rather than substantive); *Downey,* 100 F.3d at 666 (noting that the BOP's definition of the term "non-violent offense" under § 3621(e)(2)(B) to include sentence enhancement factors was contained in a Program Statement and therefore not subject to the APA).

Additionally, the new interpretation of § 3621(b) is not retroactive as to Benton. The time for applying the BOP's new interpretation is no earlier than the time of sentencing. Since the new interpretation was issued three days prior to Benton's sentencing, it is not retroactive as to her.

The Ninth Circuit's decision in *Cort v. Crabtree*, 113 F.3d 1081 (9th Cir.1997), does not assist Benton. In *Cort*, the Ninth Circuit was faced with the issue of whether the BOP could apply the change in its interpretation of whether an unarmed bank robbery was a crime of violence rendering an inmate ineligible for a sentence reduction under 18 U.S.C. 3621(e)(2)(B) for completion of the BOP's drug treatment program. The BOP applied the change to those inmates who had been previously found by the BOP to be eligible for the drug treatment program. The Ninth Circuit first noted, citing *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), that an administrative agency, such as the BOP can not make retroactive rules "unless that power is conveyed by Congress in express terms." 113 F.3d at 1084.

The new interpretation is clearly retroactive to persons who are in a community confinement center with greater than a 150–day sentence. The Court need not consider the validity of this retroactive application because Benton is not within the class of inmates effected by a retroactive application. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The Court does not find *I.N.S. v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), to help Benton's position. Unlike the change in eligibility for § 212(c) waivers for convicted aliens in *St. Cyr*, the new BOP policy does not attach new legal consequences to events already completed or impair vested rights. The new policy does not contravene concepts of "fair notice, reasonable reliance, and settled expectations" of persons who are pleading guilty. *Id.* at 321, 121 S.Ct. 2271. At the time of her guilty plea, Benton had no settled expectation in a particular sentence. She certainly had no right to rely on being designated to community confinement. In *St. Cyr*, the alien who was pleading guilty prior to the Illegal Immigration Reform and Immigrant Responsibility Act had a statutory right to seek § 212(c) relief and that relief was routinely granted in a substantial number of cases. Nor could Benton, when she pled, have any settled expectation that at sentencing she would receive a judicial recommendation for community placement, that she would be eligible for designation there or that space would be available.

The Government argues that the BOP's new interpretation would only be applied retroactively to persons who had already been accepted and designated to community confinement by the BOP. There is merit to that position. In *Furguiel v. Benov*, 155 F.3d 1046 (9th Cir.1998), the Ninth Circuit in applying the *Cort* decision held that an inmate's expectation arises for retroactivity purposes only when the BOP makes a lawful designation and then informs the prisoner of his eligibility. The court held that "[i]n order to urge a retroactivity argument, a prisoner's notice of eligibility for early release must have occurred prior to the promulgation [of the new regulation rendering him ineligible]." 155 F.3d at 1049. Thus, the Ninth Circuit has held that for changes in prison sentence benefits, the changed policy may not be applied to inmates who were found to be eligible and notified of their eligibility. *See, Bowen v. Hood*, 202 F.3d 1211, 1218 (9th Cir.2000).

Since Benton had not been accepted to and notified of a designation of community confinement at the time she pled guilty,

 

she had no settled expectation that the new interpretation retroactively effects. However, since at the time of sentencing the existence of the community confinement could affect the defendants' arguments and the Court's decision, a subsequent change in policy would retroactively affect the defendant's and the Court's expectations at that time. But that did not happen here. The new interpretation was already in effect and the Court did not rely on general community confinement. Therefore, there was no retroactive effect on Benton. The Court therefore does not need to reach whether the BOP had authority to make retroactive interpretations.

## III. CONCLUSION

The Court finds no basis to grant a writ of habeas corpus under 28 U.S.C. § 2241 or modify the sentence under 28 U.S.C. § 2255. Therefore, the Petition is DENIED. Benton shall surrender to serve her sentence at such institution as is designated by the Bureau of Prisons.

The Court is aware that cases dealing with the issues raised in this Petition are presently before the Court of Appeals and that other district courts have reached different results. The issues in this case are in fact subject to different conclusions by reasonable jurists. Given the conflict, resolution by the Ninth Circuit is inevitable. If Benton is compelled to surrender now, her claim will be moot. Given the substantial difference in opinion of the courts on the issues addressed, the Court believes a stay of surrender pending appeal is appropriate.

Judgment denying the Petition shall be entered by the Clerk. Benton's surrender is stayed pending a final decision by the Ninth Circuit on her appeal of this judgment. If Benton does not timely appeal,

the Government may move for her surrender. Bail remains as set.

**IT IS SO ORDERED.**