**Michael COHN, Petitioner–Plaintiff,**

**v.**

**THE FEDERAL BUREAU OF PRISONS, Harley G. Lappin, in his official capacity as Director of the Federal Bureau of Prisons, and Fredrick Menifee, in his official capacity as the Warden of Federal Correctional Institution—Otisville, Respondents–Defendants.**

No. 04 Civ. 0192(WHP).

United States District Court,
S.D. New York.

Feb. 10, 2004.

Charles A. Ross, Brafman & Ross, P.C., New York, New York, for Petitioner–Plaintiff.

Laura Eshkenazi, Assistant United States Attorney, New York, New York, for Respondents–Defendants.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Petitioner-plaintiff Michael Cohn moves for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and a petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. §§ 1331, 2241(a), (c)(1), and 2243, against respondents-defendants the Federal Bureau of Prisons, Harley G. Lappin, in his official capacity as director of the Federal Bureau of Prisons, and Frederick Menifee, in his official capacity as Warden of the Federal Correctional Institution—Otisville ("FCI Otisville") (collectively, the "BOP"). Cohn seeks to enjoin defendants from enforcing a BOP directive limiting pre-release community confinement to the lesser of ten percent (10%) of the offender's sentence or six months. For the reasons set forth below, Cohn's application is denied.

## BACKGROUND

Cohn was arrested on February 10, 2000, and charged in a six-count indictment with, *inter alia*, conspiracy to commit securities fraud, mail fraud and wire fraud, as well as the underlying substantive offenses (the "Indictment"). (Compl. ¶ 12.) On March 13, 2001, Cohn was convicted, after a guilty plea, of conspiracy to commit securities fraud in violation of 18 U.S.C § 371, in satisfaction of the Indictment. (Declaration of Patrick W. Ward, dated January 21, 2004 ("Ward Decl."), Ex. C: Judgment of Conviction.) On October 30, 2002, District Judge Robert W. Sweet sentenced Cohn to a twenty-one month term of incarceration, followed by a three year term of supervised release. (Ward Decl. Ex. C.)

On December 13, 2002, then-Deputy Attorney General Larry D. Thompson was advised by the Department of Justice's Office of Legal Counsel ("OLC") that the BOP's long-standing policy of interpreting the term "imprisonment" to encompass community confinement was unlawful (the "OLC Memorandum"). (Declaration of Lara K. Eshkanazi, dated January 28,

2004 ("Eshkanazi Decl."), Ex. A: OLC Memorandum, at 1 ("When an offender has received a sentence of imprisonment, the [BOP] does not have general authority . . . to place such an offender in community confinement at the outset of his sentence or to transfer him from prison to community confinement at any time BOP chooses during the course of his sentence.").) Among other things, the OLC Memorandum sought to redefine the BOP's practices under 18 U.S.C. § 3624(c), which provides that, with respect to pre-release custody, often referred to as "back end placement":

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Prior to December 2002, the BOP followed a practice that permitted it to transfer inmates to a community confinement center ("CCC") for up to the last six months of their sentences, regardless of whether the time in the CCC exceeded ten percent of the underlying sentence. (Declaration of Fredrick Menifee, dated January 21, 2004 ("Menifee Decl.") ¶¶ 4, 6.) With respect to this practice, the OLC Memorandum asserted that:

> The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period "not to exceed six months, of the last 10 per centum of the time to be served," 18 U.S.C. § 3624, and we see no basis for disregarding this time limitation.

(Eshkanazi Decl. Ex. A at 6 n. 6.)

On December 16, 2002, Deputy Attorney General Thompson adopted the OLC's opinion, and forwarded it to Kathleen Hawk Sawyer, Director of BOP, with a memorandum (the "Thompson Memorandum") stating that:

> [W]hile BOP does have limited statutory authority in 18 U.S.C. § 3624(c) to transfer an offender to a CCC prior to his release so as to "afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community," there are firm restrictions on such transfers. Specifically, the transfer may not exceed the *lesser* of (i) the last ten percent of the sentence imposed on the offender, i.e., the period of time in which the offender was committed to the custody of the BOP, or (ii) six months. The OLC opinion concludes that there are no bases for disregarding these time limitations.

(Eshkanazi Decl. Ex. B: Thompson Memorandum, at 2.) In light of the Thompson Memorandum, on December 30, 2002, Warden Menifee issued a Memorandum for Inmate Population of FCI Otisville advising that, effective December 20, 2002, BOP had changed its procedures for designating inmates to CCCs. (Eshkanazi Decl. Ex. C: Memorandum for Inmate Population.) Specifically, Warden Menifee advised that *"pre-release CCC designations are now limited in duration to the last 10% of an inmate's prison term to be served, not to exceed six months.* This limitation complies with 18 U.S.C. [§ ] 3624(c)." (Eshkanazi Decl. Ex. C.)

On January 2, 2003, Cohn began serving his sentence at FCI Otisville. (Ward Decl. Ex. B.) Assuming Cohn receives all available good conduct credits, his projected release date is July 10, 2004. (Ward Decl. Ex. B.) Applying the lesser of six months or 10% of his sentence yields a pre-release CCC transfer date of no sooner than May

17, 2004. (Ward Decl. Ex. G.) [1]

On January 9, 2004, Cohn filed this action, arguing that under 18 U.S.C. § 3621(b), the BOP has discretion to designate him to serve more than 10% of his sentence of imprisonment in a CCC. On January 21, 2004, this Court issued an order to show cause why a preliminary injunction should not be granted. (Order to Show Cause, dated January 21, 2004.) By Stipulation and Order dated January 30, 2004, the parties agreed that Cohn's motion and petition would resolve the entire matter. (Stipulation and Order, dated January 30, 2004.)

## DISCUSSION

Cohn argues that the OLC's December 2002 interpretation, as applied by the BOP: (1) is based on an erroneous interpretation of the statute; (2) violates the Administrative Procedure Act (the "APA"), 5 U.S.C. § 551, *et seq.*, because the BOP failed to provide a 30–day notice and comment period; and (3) violates the *ex post facto* clause of the United States Constitution, U.S. Const. Art. I, § 10, because it constitutes an impermissible retroactive punishment. Cohn employs a potpourri of procedural mechanisms—including a motion for a preliminary and permanent injunction, a writ of *mandamus*, and/or a declaratory judgment—to secure an order directing the BOP to review his eligibility for designation to a CCC "pursuant to the BOP's pre-December 20, 2002 statutes, rules, regulations,

policies, practices, procedures, and criteria." (Compl. at 12.)

### I. Subject Matter Jurisdiction

■ As a threshold matter, the BOP argues that this Court lacks subject matter jurisdiction to entertain Cohn's petition. Specifically, the BOP argues that writs of *habeas corpus* and *mandamus* are "extraordinary remedies" that are to be reserved for situations in which a court, in the case of a *habeas* petition, perceives a severe restraint on petitioner's liberty, or, in the case of a *mandamus* petition, in which the government has clearly usurped power or abused its discretion. The BOP's arguments are without merit. A petition for a writ of *habeas corpus* under 28 U.S.C. § 2241 is the proper vehicle for challenging the execution of the sentence of a person in federal custody, or a person sentenced for violating a federal criminal statute.[2] *See, e.g., Maleng v. Cook*, 490 U.S. 488, 493, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989); *Villanueva v. United States*, 346 F.3d 55, 63 (2d Cir.2003); *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir.1997). Indeed, a number of courts in this district and elsewhere have permitted challenges to the BOP's 10% policy under § 2241. *See, e.g., Zucker v. Menifee*, No. 03 Civ. 10077(RJH), 2004 WL 102779, at *3 (S.D.N.Y. Jan.21, 2004); *Adler v. Menifee*, 293 F.Supp.2d 363, 366–67 (S.D.N.Y. 2003); *Benton v. Ashcroft*, 273 F.Supp.2d 1139, 1143 (S.D.Cal.2003). Therefore, this Court's exercise of subject matter jurisdiction under § 2241 is appropriate.[3]

---

1. In his Complaint, Cohn calculates the earliest date of his potential transfer to a CCC *under the revised BOP guidelines as April 10, 2004, rather than May 17, 2004.* (Compl.¶ 15.) While the source of the disagreement is unclear, it is immaterial to this Court's decision.

2. While the BOP does not raise Cohn's failure to exhaust his administrative remedies as a grounds for dismissal under § 2241, in the

interest of completeness this Court exercises its discretion and excuses Cohn's failure to exhaust on the grounds of futility and irreparable injury. *See Guitard v. United States Secretary of Navy*, 967 F.2d 737, 741 (2d Cir. 1992).

3. While jurisdiction under § 2241 is sufficient for this Court to consider Cohn's various applications, subject matter jurisdiction is also proper under the *mandamus* statute, 28

## II. Standards For Injunctive Relief

"[P]reliminary injunctive relief is an extraordinary remedy and should not be routinely granted." *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir.1986); *accord No Spray Coalition, Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir.2001). Normally, "[a] party seeking a preliminary injunction in this Circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Random House, Inc. v. Rosetta Books LLC*, 283 F.3d 490, 491 (2d Cir. 2002). However, where the movant "seeks a preliminary injunction that will affect 'government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.'" *No Spray Coalition*, 252 F.3d at 150 (quoting *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir.1999)); *see also Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir.1999) (where an injunction "will alter rather than maintain the status quo," movant must show "clear" or "substantial" likelihood of success). Consequently, Cohn's motion must meet the more stringent likelihood-of-success test. *See No Spray Coalition*, 252 F.3d at 150.

## III. The BOP's Interpretation of § 3624(c)

■ Where, as here, Congress has delegated authority to an agency to administer a statute but not to issue rulings with the binding effect of law, courts must afford that agency's interpretations "some deference" where they constitute "a permissible construction of the statute." *Reno v. Koray*, 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). As the BOP is the agency charged by Congress with administering §§ 3621 and 3624, this Court must accord some deference to the BOP's revised interpretation of that statute.

■ Under a plain reading of § 3624(c), the BOP's back end placement of an inmate in a CCC prior to the end of an inmate's sentence is expressly and unambiguously limited to a "reasonable part, not to exceed six months, of the last 10 per centum of the term to be served...." *See Adler*, 293 F.Supp.2d at 367 ("Back End entry is clearly controlled by 18 U.S.C. § 3624(c) ... and the plain meaning of that statute is obvious.") (*See also* Eshkanazi Decl. Ex. A, at 6 n. 6 ("The authority conferred under section 3624(c) to transfer a prisoner to a non-prison site is clearly limited to a period 'not to exceed six months, of the last 10 per centum of the time to be served,' 18 U.S.C. § 3624, and we see no basis for disregarding this time limitation.").)

The BOP's long-standing practice of placing inmates in CCCs for periods of greater than 10% of their remaining sentence prior to the OLC Memorandum offers Cohn no relief, as "[n]obody has a vested interest in violation of the law no

U.S.C. § 1361, which grants district courts "original jurisdiction [over] any action in the nature of *mandamus* to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." While the government argues that because Cohn lacks a liberty interest in the place of his confinement, he "fails to approach the extremely exacting standard he would need to meet for the issuance of a writ of *mandamus*" (BOP Opp. at 11), this argument goes to the merits of Cohn's motion, not to this Court's jurisdiction.

matter how long continued." *Adler*, 293 F.Supp.2d at 367; *see also Rust v. Sullivan*, 500 U.S. 173, 186, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) ("This Court has rejected the argument that an agency's interpretation 'is not entitled to deference because it represents a sharp break with prior interpretations' of the statute in question.") (quotation omitted); *Chevron*, 467 U.S. at 863–64, 104 S.Ct. 2778 (an agency must be allowed to consider "varying interpretations and the wisdom of its policy on a continuing basis").

In arguing that this plain-meaning construction of § 3624(c) is improper, Cohn relies on decisions by courts in this district and elsewhere holding that the BOP's current interpretation of § 3624(c) is violative of Congress' general grant of prisoner authority to the BOP under 18 U.S.C. § 3621, and is therefore unlawful. *See, e.g., Zucker*, 2004 WL 102779, at *10; *Cato v. Menifee*, No. 03 Civ. 5795(DC), 2003 WL 22725524 (S.D.N.Y. Nov.20, 2003). Cohn's reliance is misplaced.

Specifically, § 3621(b) provides that:

The [BOP] shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau.... The Bureau may at any time ... direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b). Cohn argues that, under this general grant of authority, the BOP has plenary authority to both designate and transfer prisoners at any time, and therefore the BOP has the authority to place a prisoner in a CCC at any point during that inmate's prison term, regardless of the 10% limitation in § 3624(c). For Cohn's argument to succeed, this Court must hold that a CCC is a "place of the prisoner's imprisonment" under

§ 3621(b). However, the Second Circuit has held that a CCC is not a "place of the prisoner's imprisonment," and therefore § 3621(b)'s general grant of authority is not applicable to back end CCC designation.

In *United States v. Thomas*, the Second Circuit held that "confinement in a community correctional center was not 'imprisonment.'" 135 F.3d 873, 875 n. 3 (2d Cir.1998) (citing *United States v. Adler*, 52 F.3d 20, 21 (2d Cir.1995)); *accord Benigno v. United States*, 285 F.Supp.2d 286, 294 (E.D.N.Y.2003). While *Adler* dealt with the difference between community confinement and imprisonment under the United States Sentencing Guidelines § 5C2.1, the Second Circuit did not narrowly limit its holding that "'[i]mprisonment' and 'community confinement' are not synonyms. 'Imprisonment' is the condition of being removed from the community and placed in prison, whereas 'community confinement' is the condition of being controlled and restricted within the community." 52 F.3d at 21. *Adler* is consistent with the law in other Circuits. *See, e.g., United States v. Serafini*, 233 F.3d 758, 777 (3d Cir.2000); *United States v. Horek*, 137 F.3d 1226, 1228–29 (10th Cir.1998); *United States v. Swigert*, 18 F.3d 443, 445 (7th Cir.1994); *United States v. Latimer*, 991 F.2d 1509, 1513 (9th Cir.1993). In light of this authority, the BOP's interpretation that a CCC is not a place of imprisonment, and therefore not subject Congress' general grant of discretion to the BOP under § 3621(b), is at a minimum a permissible interpretation of the statute. Under *Koray* and *Chevron*, this Court must accord some deference to such an interpretation. *See Koray*, 515 U.S. at 61, 115 S.Ct. 2021 (holding that courts must afford an agency's interpretations "some deference" where they constitute "a permissible construction of the statute"); *see also Adler*,

293 F.Supp.2d at 369; *Benton,* 273 F.Supp.2d at 1144–46.

Even assuming *arguendo* that this Court held that a CCC is a "place of the prisoner's imprisonment" for purposes of § 3621(b), Cohn would still not prevail because under cannons of statutory construction, the more-specific § 3624(c) operates as an express limitation on § 3621(b)'s broad grant of general authority. To hold otherwise would vitiate § 3624(c)'s 10% restriction, therefore violating the fundamental principle of statutory construction that courts "must be 'reluctan[t] to treat statutory terms as surplusage' in any setting." *Duncan v. Walker,* 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (quoting *Babbitt v. Sweet Home Chapter, Cmtys. for Great Ore.,* 515 U.S. 687, 698, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995)); *see also Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (holding that it is a "cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute"); *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts … to regard each as effective."); *Washington Market Co. v. Hoffman,* 101 U.S. 112, 115, 25 L.Ed. 782 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' ").

Further, holding that § 3621(b)'s general grant of authority trumps § 3624(c)'s more specific limitation would violate another canon of statutory construction, namely that "the specific governs over the general." *Varity Corp. v. Howe,* 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *see also Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) ("It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum."); *Mancari,* 417 U.S. at 550–551, 94 S.Ct. 2474 ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment."); *Montague v. Electronic Corp. of Am.,* 76 F.Supp. 933, 936 (S.D.N.Y.1948) ("The settled rule of statutory construction is that, where there is a special statutory provision affording a remedy for particular specific cases and where there is also a general provision which is comprehensive enough to include what is embraced in the former, the special provision will prevail over the general provision, and the latter will be held to apply only to such cases as are not within the former."). This Court declines to ignore these pillars of statutory construction. *See, e.g., Adler,* 293 F.Supp.2d at 369 ("This Court regards it as a novel method of statutory construction to use the general assignment of prisoners power granted in one statute to nullify an express restriction imposed on that power by another act of Congress limited to the Back End entry of prisoners into a CCC near the end of their sentences.").

Accordingly, this Court finds that the BOP's current interpretation of § 3624(c), and its interrelationship with § 3621(b), are reasonable and permissible constructions of those statutes. Accordingly, Cohn could not succeed on the merits of his claim that the BOP's current policy is based on an erroneous interpretation of § 3624(c), and his claim for injunctive re-

lief on these grounds is denied.[4]

## IV. *The Administrative Procedures Act*

■ Cohn also contends that the BOP's current interpretation of § 3624(c) violates the APA, because the BOP did not provide for a 30–day notice and comment period as required under the Act. It is Cohn's contention that the BOP's interpretation of § 3621 falls within the APA because it constitutes agency rule-making within the meaning of 5 U.S.C. § 551(4)-(5), while the BOP contends that the rule is interpretative rather than substantive, and therefore exempt from the notice and comment requirements of the APA under 5 U.S.C. § 553(b)(3)(A).

When an agency promulgates substantive rules or regulations, the APA requires prior notice and comment via publication in the Federal Register. 5 U.S.C. § 553(b), (c). Such notice and comment is not required, however, for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). A rule is interpretive if "an agency is exercising its rule-making power to clarify an existing statute or regulation," and substantive if the agency is seeking to "create new law, rights or duties in what amounts to a legislative act." *White v. Shalala,* 7 F.3d 296, 303 (2d Cir.1993). Further, "[a]n interpretive rule changing an agency's interpretation of a statute is not magically transformed into a legislative rule." *White,* 7 F.3d at 304; *accord Syncor Int'l Corp. v. Shalala,* 127 F.3d 90, 94 (D.C.Cir. 1997) (holding that an agency may "change[ ] prior statutory interpretation . . . without notice and comment" without "exercising authority to itself make posi-

tive law" or making "a change in the legal norm"); *Orengo Caraballo v. Reich,* 11 F.3d 186, 195 (D.C.Cir.1993) ("A statement seeking to interpret a statutory or regulatory term is . . . the quintessential example of an interpretive rule.").

Applying *White's* categorical maxims, it is clear that the December 2002 BOP policy concerning back end placement is interpretive, not substantive, because it merely clarifies § 3624(c). Therefore, the 30–day notice and comment period under the APA was not required. *See Adler,* 293 F.Supp.2d at 367 ("The opinion of the Deputy Attorney General is no more than an interpretation to the effect that it simply states the obvious, that this particular emperor had no clothes, and the remedy, if any, lies with the Congress.") (internal citations omitted); *Benton,* 273 F.Supp.2d at 1146 ("In this case, the [OLC] policy statement is interpretative rather than substantive. The interpretation does not create any new law or extra-statutory obligation."); *see also Koray,* 515 U.S. at 61, 115 S.Ct. 2021 (noting that the BOP's policy that pre-imprisonment time in a CCC was not "official detention . . . is akin to an 'interpretive rule' that 'do[es] not require notice and comment'") (quoting *Shalala v. Guernsey Mem'l Hosp.,* 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995)); *Chrysler Corp. v. Brown,* 441 U.S. 281, 302 n. 31, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (noting that the Attorney General's Manual on the APA defines an interpretative rule as a rule issued by an agency "to advise the public of the agency's construction of the statutes and rules which it administers."). Accordingly, as there has been no violation of the APA, Cohn's appli-

---

4. While this Court analyzes Cohn's claims under the more rigorous likelihood-of-success standard, its determination would be the same if it employed the "sufficiently serious

questions going to the merits" standard for non-governmental injunctive relief, since this Court does not believe that serious questions exist. *See supra* Section II.

cation for injunctive relief on that ground is also denied.

## V. *The* Ex Post Facto *Clause*

 Finally, Cohn argues that the BOP's interpretation of § 3624(c) violates the *ex post facto* clause of the Constitution and otherwise has an impermissibly retroactive effect. Laws, policies, and other actions violate the *ex post facto* clause if they punish behavior not illegal at the time it was committed, or increase punishment beyond that which was authorized at the time of the offense. *Garner v. Jones,* 529 U.S. 244, 249–50, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). The BOP's December 2002 interpretation of § 3624(c) does neither, as it merely corrects the BOP's erroneous prior interpretation of pre-existing law. As the Second Circuit held in *Adler,* such a correction does not violate the *ex post facto* clause because "there was no change in the plain meaning of the statute." 293 F.Supp.2d at 368; *accord Caballery v. United States Parole Comm'n,* 673 F.2d 43, 47 (2d Cir.1982) (no *ex post facto* violation where agency corrected mistaken interpretation of the law regarding tolling of youth offenders' sentences, holding that "an agency misinterpretation of a statute cannot support an *ex post facto* claim"); *see also Warren v. Baskerville,* 233 F.3d 204, 208 (4th Cir.2000) (in implementing parole and sentencing procedures, agency must be able "to make policy adjustments without raising the specter of constitutional litigation"); *Stephens v. Thomas,* 19 F.3d 498, 500 (10th Cir.1994) (finding no *ex post facto* violation where agency stopped applying good time credit statute to prisoners with life sentences); *Glenn v. Johnson,* 761 F.2d 192, 194–95 (4th Cir.1985) (finding no *ex post facto* violation where agency adopted Attorney General's opinion correcting misapplication of statute limiting parole); *Benton,* 273 F.Supp.2d at 1146 ("Since Benton's sentence is not increased,

there is no violation of the *ex post facto* clause."); *United States v. Pena,* No. 00–CR–170S–1, 2003 WL 21197024, at *3 (W.D.N.Y. May 16, 2003) (finding no *ex post facto* violation where the "BOP has changed its placement policy to conform to its corrected interpretation of the law").

## CONCLUSION

For the foregoing reasons, petitioner-plaintiff Michael Cohn's motion for a preliminary injunction and petition for a writ of *habeas corpus* are denied. However, this Court recognizes that the OLC Memorandum and the resultant BOP policy presents an issue that sharply divides district courts across the country and within this district. *See, e.g., Adler,* 293 F.Supp.2d at 366–67 (denying petitioner relief and holding BOP policy lawful); *Benton,* 273 F.Supp.2d at 1143 (same); *Kennedy v. Winn,* No. 03–CV–10568 (MEL), 2003 WL 23150108, *4 (D.Mass. July 9, 2003) (Eshkanazi Decl. Ex. I); *Pena,* 2003 WL 21197024, at *3 (same); *United States v. Kramer,* 2003 WL 1964489 (N.D.Ill. Apr.28, 2003) (same); *United States v. James,* 244 F.Supp.2d 817 (E.D.Mich. Jan.27, 2003) (same); *United States v. Gilbride,* 2003 WL 297563 (M.D.Pa. Jan.31, 2003) (same); *but see, e.g., Zucker,* 2004 WL 102779 (granting petitioner relief and holding BOP policy unlawful); *Cato,* 2003 WL 22725524 (same); *Greenfield v. Menifee,* No. 03 Civ. 8205(KMW), 2003 WL 23181269 (S.D.N.Y. Oct. 31, 2003) (bench decision) (Eshkanazi Decl. Ex. E) (same); *Monahan v. Winn,* 276 F.Supp.2d 196 (D.Mass.2003) (same); *Tipton v. Fed. Bureau of Prisons,* 262 F.Supp.2d 633 (D.Md.2003) (same); *Iacaboni v. United States,* 251 F.Supp.2d 1015 (D.Mass.2003) (same); *Culter v. United States,* 241 F.Supp.2d 19 (D.D.C.2003) (same). Therefore, because of the unsettled nature of the law, and because "liberty is

at stake," *Adler*, 293 F.Supp.2d at 363, this Court hereby issues a Certificate of Appealability extending to all issues of law raised in this motion and petition. The Clerk of Court is directed to mark this case closed.